# EX PARTE IN THE MATTER OF THE STATE OF NEW YORK ET AL., OWNERS OF THE STEAM TUG QUEEN CITY, PETITIONERS.

## ON PETITION FOR WRIT OF PROHIBITION AND/OR WRIT OF MANDAMUS.

No. 26, Original.   Argued December 14, 1920.—Decided June 1, 1921.

1. The facts that a vessel, libeled in the District Court, is the property of a State, in its possession and control and employed in its public governmental service, may be established, *prima facie*, at least, by

a suggestion verified and filed by the attorney general of the State, in his official capacity, in connection with his special appearance and objection to the jurisdiction. P. 509. *Ex parte Muir*, 254 U. S. 522, distinguished.

2. Under the admiralty law, a vessel owned and possessed by a State and employed exclusively for its governmental purposes, is exempt from seizure in a suit to recover damages for a death caused by her negligent operation. P. 510.

Rule absolute for writ of prohibition.

PROHIBITION to restrain proceedings in admiralty in the District Court. The case is stated in the opinion, *post*, 508.

*Mr. Edward G. Griffin*, with whom *Mr. Charles D. Newton*, Attorney General of the State of New York, and *Mr. George A. King*, were on the brief, for petitioners.

*Mr. Irving W. Cole*, with whom *Mr. Thomas P. Haley* was on the brief, for respondents:

There can be no question but that originally the District Court had jurisdiction, under the facts set forth in the libel. It is not claimed otherwise, but only that something has been since extraneously suggested which ousts such jurisdiction—the ownership of the *res* by the State. It is, therefore, not a question of jurisdiction, but whether, in such a situation, the powers of a court, originally having jurisdiction, and the jurisdiction itself, are destroyed, or still exist and should be continued over the subject-matter to judgment.

The objections to such continuance now interposed by the State, we say, should properly be interposed according to the requirements of proceedings and practice in admiralty courts, by appearing and claiming ownership and excepting or answering to the libel, setting forth the grounds. Then a plea based on the sovereign attributes of the State could be heard, and, if overruled, appeal

could be taken as a matter of right to the Circuit Court of Appeals and from there to this court. *The Steamship Jefferson,* 215 U. S. 130; *The Ira M. Hedges,* 218 U. S. 264; *Illinois Central R. R. Co.* v. *Adams,* 180 U. S. 28; *South Carolina* v. *Wesley,* 155 U. S. 542.

This suit in its present form is purely *in rem.* A question may arise whether such a suit, when not *in personam,* can be maintained under the New York Death Statutes (§§ 1902, 1903, 1904, 1905, New York Code Civil Procedure). This, however, is not a ground for prohibition, *Ex parte Gordon,* 104 U. S. 515; nor is any such ground urged here.

If, however, the owner of the vessel or any claimant shall appear and proceed by claim, and exception or answer, according to the usual practice in admiralty, libelants will be formally advised as to who the person, or corporation, or State is that may be liable *in personam.* Having become so informed libelants may procure the libel to be amended, making such person, corporation, or State, as well as the vessel, a party, and will then have the advantage of a suit *in personam* as well as *in rem* to meet any objection to the suit raised by exception or defense, and have a chance to litigate it. For instance, the master or captain sailing the vessel at the time or the superintendent of the canals having charge of the vessel and who authorized its use at the time, might either or both be personally liable. The State itself, if it owns the boat and was operating it as a master of servants in immediate charge of it, might be claimed to be privy to the negligence or wrong and liable *in personam,* at least in a suit in admiralty. Canal Law, § 47; Code Civ. Proc., § 264.

The question might arise as to whether the State has waived its immunity from liability to libelants, if that be necessary to recovery. The State owns and operates the canals for commercial purposes. It has waived

its immunity from liability for damages caused in such
operation, to a large extent at least, by § 47 of the State
Canal Law. Has the State waived its immunity from
liability to libelants for the damages they have suffered
as alleged? Is the State while operating a vessel on its
canals for commercial purposes for pay, through officers
and employees, engaged thereby in such governmental
functions as will prevent a court of admiralty from exer-
cising powers exclusively lodged in it?

All these questions may become important, as under
*Workman* v. *New York City,* 179 U. S. 552, where they
were litigated in the regular and proper way on the
merits and not by writ of prohibition.

It is well established that the writ of prohibition lies
only where the District Court clearly had no jurisdiction
of the case originally and where the relator has no other
remedy.

Where a district court has jurisdiction the writ does
not lie to restrain it from proceeding to exercise such
jurisdiction, *Morrison* v. *District Court,* 147 U. S. 14; but
will issue only in case of want of jurisdiction either of the
parties or the subject-matter of the proceeding and can-
not be used as a substitute for exception to a libel for in-
sufficiency. *In re Fassett,* 142 U. S. 479. It will not
issue to restrain the court from proceeding in a libel case
against a vessel for damages for drowning a person in a
collision. *Ex parte Gordon,* 104 U. S. 515; *Ex parte Detroit
River Ferry Co.,* 104 U. S. 519. It cannot be used to
correct errors of a court in deciding matters of law or fact
within its jurisdiction, *Smith* v. *Whitney,* 116 U. S. 167;
and will be issued only on the record in the suit. *Ex
parte Easton,* 95 U. S. 68. The record of the suit shows
jurisdiction perfect.

We say, therefore, that this is not a case for prohibition,
but the grounds urged for the prohibition should be dis-
posed of when raised in the regular and usual manner

on the merits of the case. *Scully* v. *Bird,* 209 U. S.
481.

The body of admiralty law and the federal judicial
power in admiralty and maritime jurisdiction are para-
mount and exclusive over and against everything except
the sovereignty of the Federal Government itself, and
foreign sovereignties having treaty rights. They recognize
but one sovereignty in the United States, that of the
Federal Government. Nor can there be but one sovereign
power over the same thing at the same time. As to this
body of law and these judicial powers, the States have
surrendered both their sovereign powers and sovereign
privileges under the Constitution. The State can have
or enact no law contravening or affecting them. Nor can
it urge its sovereign attributes to accomplish the same
results. To hold otherwise would be a contradiction.
*Workman* v. *New York City,* 179 U. S. 552; *The Lake
Monroe,* 250 U. S. 246; *Knickerbocker Ice Co.* v. *Stewart,*
253 U. S. 149; *Southern Pacific Co.* v. *Jensen,* 244 U. S.
205; *Union Fish Co.* v. *Erickson,* 248 U. S. 308.

It is immaterial to whom the vessel proceeded against
in admiralty belongs. *Clark* v. *New Jersey Steam Navi-
gation Co.,* Fed. Cas. No. 2,859; *The John G. Stevens,* 170
U. S. 113; *The Siren,* 7 Wall. 152.

The question as to the limits of maritime law and
admiralty jurisdiction is exclusively a judicial question.
*The Lottawanna,* 21 Wall. 558; *Ex parte Easton,* 95 U. S. 68.

The jurisdiction depends not on the character of the
parties but on the subject-matter. *The Jerusalem,* Fed.
Case. No. 7,293; *De Lovic* v. *Boit,* Fed. Cas. No. 3,776;
*Clark* v. *New Jersey Steam Navigation Co., supra.*

The use of the words "admiralty" and "maritime"
in the Constitution relates simply to subject-matter and
embraces all cases arising under the general maritime
law. *Waring* v. *Clarke,* 5 How. 441, 473.

The vessel in question being, and having committed the

marine tort, in maritime waters was under the exclusive
sovereignty of the United States and within the exclusive
federal judicial power. The State cannot, by reason of
its sovereignty as to other matters and things, oust or
limit either the federal sovereignty or the jurisdiction and
powers of the federal courts over the *res*, the vessel.

MR. JUSTICE PITNEY delivered the opinion of the court.

In October, 1920, Martin J. McGahan and another, as
administrators of Evelyn McGahan, deceased, filed a
libel in admiralty in the District Court of the United.
States for the Western District of New York against the
Steam Tug *Queen City*, her tackle, apparel, and furniture,
to recover damages alleged to have been sustained through
the death of deceased by drowning, due to the negligent
operation of the *Queen City* upon the Erie Canal, in said
district. The Attorney General of the State of New
York appeared specially for the purpose of questioning
the jurisdiction of the court, and filed a verified suggestion
of the want of such jurisdiction over the *Queen City*, for
the reason that at all times mentioned in the libel and at
present she was the absolute property of the State of
New York, in its possession and control, and employed in
the public service of the State for governmental uses
and purposes, and, at the times mentioned in the libel,
was authorized by law to be employed only for the public
and governmental uses and purposes of the State of New
York, such purposes being the repair and maintenance
of the Improved Erie Canal, a public work owned and
operated by the State, and particularly the towing of
dredges, the carrying of material and workmen, the tow-
ing of barges and vessels containing material, and the
setting, replacing, and removing of buoys and safety
devices. He prayed that the vessel be declared immune
from process and free from seizure and attachment, and

that the libel and all proceedings thereunder be dismissed for want of jurisdiction.

The District Court overruled the suggestion and awarded process *in rem*, under which the *Queen City* was arrested. Thereupon the Attorney General, in behalf of the State, filed in this court, under leave granted, a petition for a writ of prohibition to require the District Court to desist from further exercise of jurisdiction and for a mandamus to require the entry of an order declaring the *Queen City* to be immune from arrest. An order to show cause was issued, to which the District Judge made return, embodying by reference the admiralty proceedings; and the matter was argued together with No. 25, Original, *Ex parte New York, No. 1,* just decided, *ante,* 490.

To the suggestion that the *Queen City* is the property of the State of New York, in its possession and control and employed in its public governmental service, it is objected at the outset that the record and proceedings in the suit in admiralty do not disclose the identity of the owner of the vessel or that she was employed in the governmental service of the State. We deem it clear, however, that the verified suggestion presented by the Attorney General of that State, in his official capacity as representative of the State and the People thereof, amounts to an official certificate concerning a public matter presumably within his official knowledge, and that it ought to be accepted as sufficient evidence of the fact, at least in the absence of special challenge. The suggestion was overruled and denied, with costs, and process thereupon ordered to issue against the vessel, without any intimation that there was doubt about the facts stated in the suggestion, or opportunity given to verify them further. It would be an unwarranted aspersion upon the honor of a great State to treat facts thus solemnly certified by its chief law officer, and accepted as true when passed upon by the District Court, as now requiring

Verification. *Ex parte Muir*, 254 U. S. 522, differs widely, for there the suggestion that the vessel was exempt because of its ownership and character came not through official channels but from private counsel appearing as *amici curiæ*, who, on being challenged to submit proof in support of the allegations in the suggestion, refused to do so. Of course, there were other and more fundamental differences, but it is the one mentioned that especially concerns us upon the question of practice.

Accepting, as we do, the facts stated in the suggestion of the Attorney General, the record—aside from whether a suit in admiralty brought by private parties through process *in rem* against property owned by a State is not in effect a suit against the State, barred by the general principle applied in *Ex parte New York, No. 1*, No. 25, Original —presents the question whether the proceeding can be based upon the seizure of property owned by a State and used and employed solely for its governmental uses and purposes.

By the law of nations, a vessel of war owned by a friendly power and employed in its service will not be subjected to admiralty process; and this upon general grounds of comity and policy. *Schooner Exchange* v. *McFaddon*, 7 Cranch, 116, 144–147. In a case before Judge Francis Hopkinson in the admiralty court of Pennsylvania in 1731, on a plea to the jurisdiction, it was adjudged that marines enlisting on board a ship of war or vessel belonging to a sovereign independent state could not libel the ship for their wages. *Moitez* v. *The South Carolina*, Bee, 422; Fed. Cas. No. 9,697. The question whether by international law the rule of *The Exchange* is to be applied to other kinds of public vessels owned or controlled by friendly powers (see *The Parlement Belge* [1880], L. R. 5 Prob. Div. 197), was stirred in *Ex parte Muir, supra*, but found unnecessary to be decided. It does not now press for solution; for, aside from the obligations of inter-

national law, though upon principles somewhat akin, it is uniformly held in this country that even in the case of municipal corporations, which are not endowed with prerogatives of sovereignty to the same extent as the States by which they are created, yet because they exercise the powers of government for local purposes, their property and revenue necessary for the exercise of those powers are to be considered as part of the machinery of government exempt from seizure and sale under process against the city. As Mr. Chief Justice Waite said, speaking for this court in *Klein* v. *New Orleans*, 99 U. S. 149, 150, "To permit a creditor to seize and sell them to collect his debt would be to permit him in some degree to destroy the government itself." The rule was applied in the admiralty by the same learned Chief Justice, sitting on appeal at the circuit, in *The Fidelity*, 16 Blatchf. 569; Fed. Cas. No. 4,758, upon a well-considered opinion. To the same effect, *The Seneca* (1876), Fed. Cas. No. 12,668; *Long* v. *The Tampico* (1883), 16 Fed. Rep. 491, 494; *The Protector* (1884), 20 Fed. Rep. 207; *The F. C. Latrobe* (1886), 28 Fed. Rep. 377, 378; *The John McCraken*, 145 Fed. Rep. 705, 706.

The principle so uniformly held to exempt the property of municipal corporations employed for public and governmental purposes from seizure by admiralty process *in rem*, applies with even greater force to exempt public property of a State used and employed for public and governmental purposes.

Upon the facts shown, the *Queen City* is exempt, and the prohibition should be issued.

*Rule absolute for a writ of prohibition.*