### THE MALIAKOS.

### IRVING TRUST CO. et al. v. THE MALIAKOS.

### LIGGETT & MYERS TOBACCO CO., Inc., v. THE MALIAKOS et al.

### AMERICAN TOBACCO CO., Inc., v. SAME.

District Court, S. D. New York.

Oct. 10, 1941.

Hatch & Wolfe, of New York City, for the Kingdom of Greece.

Crawford & Sprague, of New York City, for libellants Irving Trust Co. and another.

Bigham, Englar, Jones & Houston, of New York City, for libellants Liggett & Myers Tobacco Co. and another.

BRIGHT, District Judge.

In each of these actions, His Excellency, C. Diamantopoulos, Minister for the Kingdom of Greece to the United States, requests an order declaring that the steamship "Maliakos" is the property of the Kingdom of Greece and immune from suit in this court, and dismissing the actions and attachments under which the ship was arrested.

Each action is brought on contract to recover for cargo damage to tobacco shipped from ports in Greece, which on discharge at Newport News and New York, it is claimed, was found not to be in like con-

698

dition as when shipped. Libels in rem were filed and the ship arrested at the times set opposite the titles.

It is shown without substantial dispute, and I find as facts, that prior to July 1, 1941, the steamship was requisitioned by the Greek Government and notice thereof given to Captain N. Courbellis, director of the Mercantile Division of the Greek Consulate General in New York. On June 8, 1941, he cabled to the master of the steamship that his vessel was so requisitioned by order of the Greek Legation in London, to which said Greek Government had fled after having been driven out of Greece by the advance of the German and Italian military forces. The master telegraphed his compliance with the order, and on the same day, Captain N. Dourgoutis, representing the Greek Government, and acting under the instructions of Captain Courbellis, boarded the vessel and took possession thereof at Newport News, Virginia, making entry thereof in the log of the vessel, the master doing likewise, the ensign carried by requisitioned vessels was run up, notices of the requisition were posted in various parts of the vessel, and acknowledgment of the Greek Government's possession was duly cabled to the Greek Shipping Committee of the Greek Legation in London.

The steamship after discharging part of its cargo, proceeded on to the Port of New York, and there discharged the remainder of its cargo, after which it was arrested on the three several dates above stated.

After the arrest in the first case, and before the arrest in the two other cases, and on July 11, 1941, His Excellency C. Diamantopoulos filed with the Honorable Cordell Hull, Secretary of State of the United States, a letter in which he requested that the proceedings in this court be vacated and the steamship delivered to him as the accredited and recognized representative of the Greek Government, stating, in substance, that pursuant to the Greek law, which authorized the requisitioning of vessels flying the Greek flag for governmental purposes, Mr. Ch. Simopolous, Minister of the Royal Greek Government at London, was authorized to exercise the powers of requisition, that he had requisitioned this steamship, and that letter related the facts above set forth with reference to the actual occupation and taking possession of the vessel. It further stated that at the time of the arrest of the vessel in this court, it was in the possession of

the Royal Greek Government, was being operated in its service and interest, and was so employed in the service and interest of the whole Greek nation as distinguished from any individual thereof; that the Greek Government, in its successful prosecution of the war in which it was then engaged, was in urgent need of the vessel for the transport of materials necessary for the successful prosecution of the war; and that great damage to the Royal Greek Government would ensue should the attachments be continued and the vessel detained. He further requested the Secretary of State to make suggestion to the Attorney General that the appropriate United States Attorney file a suggestion of immunity in which the State Department would recognize the contents of the appeal and its desire for the release of the steamship. On August 14, 1941, he submitted further documents and additional information in support of his request, which also included ample proof of the Greek law upon the subject.

In conformity with that request, the Secretary of State, on August 25, 1941, sent to the Attorney General copies of the two notes from the Greek Minister, and requested him to instruct the appropriate United States Attorney to appear in the proceedings in the first entitled action, and to state to the court that the State Department "accepts as true the statements of fact contained in the Greek Minister's notes". The Honorable Mathias F. Correa, United States Attorney for this District, on September 3, 1941, did as requested, and his suggestion of immunity is a part of the record.

No suggestion of immunity has been filed in either of the last two entitled cases for the reason that, when the Greek Minister's first note was written, they had not been commenced; but the motion to dismiss is based upon the suggestion filed in the first case. It is clear, however, that the "Maliakos" was requisitioned and taken possession of by the Greek Government before the commencement of or arrest in any of the three cases.

Under the facts stated, which our State Department "accepts as true", I think that the steamship is immune from attachment in either of the foregoing cases. Compania Espanola v. The Navemar, 303 U.S. 68–74, 58 S.Ct. 432, 82 L.Ed. 667; Sullivan v. State of Sao Paulo, D.C., 36 F.Supp. 503, affirmed by the Circuit Court of Appeals, Second Circuit, August 4, 1941, 122 F.2d

355; American Tobacco Co. v. S. S. Ioannis P. Goulandris, D.C., September 20, 1941, 40 F.Supp. 924, opinion by Moscowitz, D. J. To hold otherwise, it seems to me "would be an unwarranted aspersion upon the honor of a great state" (Ex parte State of New York, No. 2, 256 U.S. 503–509, 41 S.Ct. 592, 65 L.Ed. 1063), particularly when the facts stated by its Minister are by our Secretary of State accepted as true. Immunity was granted to a merchant vessel of Italy engaged in a peace time pursuit upon the statements of the foreign representative alone without any intervention by our State Department. Berizzi Brothers Co. v. The Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088.

I do not think that the fact that the cargo was discharged at Newport News and New York in any way changes the status of the ship. In fact, the instructions with reference thereto recognize that the voyages already begun must not be interrupted. The naming of vessels other than "Maliakos" in the cable of May 24, 1941, did not prevent the requisitioning of the latter, which is recognized by our State Department as having been done. The named vessels in the cable of May 29, 1941, seem to have been already "requisitioned and loading for the account of the Greek Government" and as to those, the requisition was to be continued and all formalities executed.

It was suggested in the memorandum of the proctors for the libellants in the first action, that I communicate with the Department of State to obtain a direct statement as to its present position. I did so and am in receipt of the following letter which will be filed in the case:

"My dear Judge Bright:

"I have received your letter dated September 18, 1941 regarding the actions pending in the United States District Court for the Southern District of New York against the S. S. Tassia and S. S. Maliakos in respect to which motions are pending before you on behalf of the Kingdom of Greece for dismissal thereof for want of jurisdiction on the ground that the 'suits are brought against the property of a friendly foreign sovereign nation, to wit, the Steamships "Tassia" and "Maliakos", not subject to the jurisdiction of the court and immune from suit therein.' You inquire whether I have recognized and allowed the claim of immunity made by the Greek Minister with reference to these two steamships.

"In my letters of August 25, 1941 to the Honorable Francis Biddle, Acting Attorney General, I stated that the statements of fact contained in the notes of the Greek Minister at Washington were accepted as true. By this statement I intended to convey the understanding that I recognized as warranted the claim of immunity made by the Greek Minister with reference to these steamships.

"Sincerely yours,
"(signed) Cordell Hull"

The State Department clearly recognizes "as warranted the claim of immunity made by the Greek Minister with reference to these steamships"; and it is my duty under the Navemar case, to do likewise. In fact, under the decisions I would feel amply justified in doing so from the suggestion of immunity alone.

The motions in each of the three cases will be granted insofar as they dismiss the libels in rem.