Maxwell B. Fields, Respondent, *v.* Predionica i Tkanica A. D., Defendant.

Royal Yugoslav Government, Appearing Specially, Appellant.

First Department, December 19, 1941.

*Gerald B. O'Neill* of counsel [*William M. Chadbourne* with him on the brief; *Chadbourne, Hunt, Jaeckel & Brown,* attorneys], for the appellant, appearing specially.

*Meyer Grouf* of counsel [*David Sklaire* with him on the brief; *Wachtell, Manheim & Grouf,* attorneys], for the respondent.

Callahan, J. This is an appeal from an order denying the motion of the Royal Yugoslav Government for permission to appear specially in the above-entitled action for the purpose of moving to assert the sovereign rights of said government with respect to property which was the subject of attachment and levy therein.

Plaintiff is the assignee of a citizen of the Republic of Argentine. Defendant Predionica i Tkanica A. D. is a corporation organized

under the laws of Yugoslavia and conducting business in said country. Asserting a cause of action for damages for breach of a contract alleged to have been made by defendant with his assignor, plaintiff attached 963 bales of cotton which he claimed were the property of said defendant. Upon the basis of jurisdiction alleged to have been thus acquired, plaintiff proceeded to make service upon the defendant by publication and to enter judgment.

Under the attachment, which was levied on July 14, 1941, the sheriff of Kings county seized 963 bales of cotton which were then part of the cargo of the steamship *Bosiljka*, located in New York harbor. The cotton was taken to Richmond county for storage with the consent of the sheriffs of Kings and Richmond counties, who joined in making the attachment.

On September 19, 1941, which was prior to the entry of judgment herein, one Vladimir Rybar, alleging that he was the duly accredited counselor of the Legation of the Royal Yugoslav Government at Washington, D. C., and that he was acting upon direct instructions of the Royal Yugoslav Government in London, England, and of its Minister in Washington, D. C., procured an order directing the plaintiff to show cause why the Royal Yugoslav Government should not be permitted to appear specially for the purpose of moving to assert its rights in this action, and staying the entry of final judgment pending the hearing and determination of the motion.

Mr. Rybar asserts that he was the officer in charge of matters affecting the steamship *Bosiljka*. He also avers that the defendant is a Yugoslav corporation carrying on its business in that country; that its officers were Yugoslav nationals; that since the German invasion of Yugoslavia, which occurred on April 6, 1941, the records of the defendant corporation have not been available; that, pursuant to a statute regularly adopted in Yugoslavia on September 30, 1931, all resources of that country and its citizens were to be put at the disposal of the government at a time of emergency, mobilization or war by the issuance of a royal proclamation to that effect.

Mr. Rybar further alleges that on April 1, 1941, a royal proclamation was issued by said government making the law effective. He sets forth that prior to the declaration of war on Yugoslavia by Germany the steamship *Bosiljka* belonged to the Alceau Steamship Company of Zagreb, Yugoslavia; that said vessel, while under the Yugoslav flag, was loaded in the port of New York; that a large part of its cargo was owned by the Yugoslav government and the remainder consigned to private firms in Yugoslavia. He asserts that after the occupation of Yugoslavia by Germany and Italy the master of the steamship *Bosiljka* put into a port in Brazil; that later

the crew of the vessel was removed and the vessel placed in charge of a British crew, and that it sailed to the United States under the Yugoslav flag. He said that the vessel took this course under directions of the Royal Yugoslav Government telegraphed to the Yugoslav Minister to the United States; that said directions were for the purpose of carrying out the *requisition of the ship and cargo* pursuant to the power granted by the 1931 emergency law; that on July 2, 1941, the Yugoslav Legation to the United States advised the United States Treasury Department of its intention to discharge the cargo in New York, to sell it, and to deposit the proceeds to the credit of the Royal Yugoslav Government in an account for the benefit of whom it might concern; that on July 5, 1941, the Treasury Department granted the license to the Royal Yugoslav Legation to discharge the cargo, but directed that no part of it was to be sold without a specific license.

It is then alleged by Mr. Rybar that on July 14, 1941, while the steamship *Bosiljka* was being unloaded, the attachment of the plaintiff herein was levied.

In effect, the Royal Yugoslav Government claims that the property attached was its property by reason of the requisition which became operative as an expropriation of the ship and so much of its cargo as belonged to Yugoslav nationals when the vessel reached the high seas. It likewise claims that since then the vessel has been in possession of its agents. It asserts that for the reasons indicated said property was immune from attachment by private litigants and that the plaintiff's attachment is void *ab initio*. Accordingly, it asks permission of the court to appear specially for the purpose of moving to assert its sovereign rights.

On the record we find sufficient facts alleged to show at least *prima facie* that a duly authorized representative of the Royal Yugoslav Government, a friendly nation, asserts ownership of the cotton levied on by plaintiff, and the immunity of said property from seizure. There has been, however, in this case no suggestion to the court from the Executive Department of our government recognizing the validity of the Yugoslav claim of immunity; nor has the Attorney-General or any other law officer of our government appeared before the court or made any representation with respect to the ownership of the property or its immunity from attachment.

In view of the facts which we have found to be established *prima facie* the principal question remaining is whether the Yugoslav Government or its duly accredited officials may in their own right, and upon a special appearance, assert the claim that the attached cotton was the property of that government and immune from attachment, or whether the proper procedure required that govern-

ment to appear generally as would any ordinary third party claiming title to the goods.

Respondent contends that even if the Yugoslav Government has an interest in the cotton attached, such interest can be asserted in only one of two ways: (1) by diplomatic intervention of our Executive Department, or (2) by the Yugoslav Government's taking such steps as are allowed to any other litigant, based on a general appearance as a suitor.

Appellant, on the other hand, contends that the procedure which it has adopted herein is the correct one.

We think that appellant is proceeding properly by seeking leave to intervene through a special appearance for the purpose of asserting a claim of sovereign immunity as to the property attached.

The right of the representatives of a foreign government to assert a claim of immunity, without diplomatic intervention of representatives of our government, has been recognized by the highest court of our land. (See *Compania Espanola* v. *Navemar*, 303 U. S. 68.) In that case the Supreme Court of the United States pointed out that, while a mere "suggestion" of immunity tendered by representatives of a foreign government, without the intervention of our Executive Department, was not conclusive on a court, nor would such a "suggestion" standing alone furnish sufficient proof of title or of the immunity claimed, so as to require the courts to relinquish jurisdiction, the courts would, upon a proper showing, grant permission to the foreign government to intervene to establish the claim asserted.

In *Ex Parte Muir* (254 U. S. 522) the suggestion of immunity did not come through official channels, but from private counsel appearing as *amicus curiæ*, who, on being challenged, refused to submit proof in support of the claim. In *The Pasaro* (255 U. S. 216) the suggestion was not intended to place the diplomatic representative or his government in the attitude of a suitor, nor was the suggestion established by proof. A sovereign may waive his claim of immunity and subject himself to jurisdiction by a general appearance or by conduct on his part inconsistent with a special appearance. (*Ervin* v. *Quintanilla*, 99 F. [2d] 935; certiorari denied, 306 U. S. 635.) The usual practice has been for the foreign government to present a request to our courts to decline jurisdiction upon a special appearance for that purpose. (See *Hassard* v. *United States of Mexico*, 29 Misc. 511; affd., 46 App. Div. 623; affd., 173 N. Y. 645; *Lamont* v. *Travelers Ins. Co.*, 281 id. 362; *Hannes* v. *Kingdom of Roumania Monopolies Institute*, 260 App. Div. 189.)

Where a claim of immunity is recognized and made known by the Executive Branch of our government it is then the duty of the court to grant immunity without further proceedings. However, even without such intervention by our own government the foreign sovereign would seem to be entitled as a matter of comity, upon a proper showing, to appear specially in a pending suit and there to assert its claims. (*Compania Espanola* v. *Navemar*, *supra*. See, also, *Ex Parte State of New York*, 256 U. S. 503.) The claim which the sovereign thus makes is not that of an ordinary suitor, but one of immunity from suit or immunity of its property from seizure. Such a claim is made for the purpose of asking the court to decline jurisdiction. Upon the motion, as presented in Special Term herein, the issue was not whether the proof sufficiently established appellant's claim of immunity. The question was whether the appellant should be permitted to appear specially for the purpose of offering proof of such claim. We find that such permission should have been granted as a *prima facie* showing of sovereign dominion over the goods involved and immunity thereof from seizure was disclosed upon the papers submitted. Once the appellant has been granted permission to appear specially it will then be required, in an appropriate proceeding, to assume the burden of establishing the facts essential to warrant a declination of jurisdiction by the court and a release of the goods attached or a release of the proceeds of the attachment.

The order should be reversed, with twenty dollars costs and disbursements to appellant, and the motion granted.

O'MALLEY, TOWNLEY, GLENNON and COHN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and the motion granted. Settle order on notice.