Naomi PETTY, Administratrix of the Estate of Faye R. Petty, Deceased, Appellant,

v.

TENNESSEE–MISSOURI BRIDGE COMMISSION, a Corporation, Appellee.

No. 15878.

United States Court of Appeals Eighth Circuit.

May 1, 1958.

---

Douglas MacLeod, St. Louis, Mo. (Fred Robertson, Tiptonville, Tenn., and Miles & Miles, Union City, Tenn., were with him on the brief), for appellant.

James M. Reeves, Caruthersville, Mo. (Ward & Reeves, Caruthersville, Mo., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff-administratrix has appealed from final order dismissing her complaint for damages for wrongful death of her decedent. Plaintiff, as administratrix of the estate of her deceased husband, in her complaint asserted that her deceased husband, while employed as a seaman upon a ferry boat operated by the defendant across the Mississippi River between Tiptonville, Tennessee, and Portageville, Missouri, met his death when trapped in the pilot house of the ferry boat as it sank, as the result of a collision with another boat; that her husband's death was caused by the negligence of the defendant; and that recovery of damages is authorized by the Jones Act, 46 U.S.C.A. § 688.

Defendant filed a motion to dismiss based upon the following grounds:

"1—Because this action is essentially a suit against the States of Tennessee and Missouri, which cannot be maintained in the Courts of the United States, or any other Courts.

"2—Because this action is in substance and effect one against the States of Tennessee and Missouri, without consent, over which neither the judicial power of the United States or the States of Tennessee or Missouri extends.

"3—Because this is a suit against an agency created by the sovereign States of Tennessee and Missouri, approved by an Act of Congress, and suits of this class are not permitted by the Constitution and Laws of the States of Tennessee and Missouri, or either of them, and this defendant is immune and not liable in damages in suits of this class.

"4—Because this Court has no jurisdiction over the person of this defendant, or the subject matter of this action."

The court in its decision states that the motion may be treated as a motion for summary judgment.

The trial court sustained the defendant's motion and dismissed the complaint upon the basis that the suit against the defendant was in effect a suit against the States of Tennessee and Missouri, that the defense of sovereign immunity was available to said States, and that such defense had not been waived. The appeal challenges the validity of this determination.

Plaintiff in her brief states that defendant's claim of sovereign immunity must be denied for each of the following reasons: (1) defendant is a separate entity from the States of Tennessee and Missouri; (2) the States have waived sovereign immunity; (3) the States, by empowering the Commission to engage in maritime commerce and interstate commerce, "subordinated themselves and it to the Federal Government's power to regulate interstate commerce and its power over matters maritime, and all laws enacted to implement these powers, including the Jones Act."

The pertinent facts relative to the creation and operation of the Bridge Commission may be summarized. The Bridge Commission is a "body corporate and politic." The Commission was created in 1949 pursuant to the General Bridge Act of 1946, 33 U.S.C.A. §§ 525–533, by joint action of the legislatures of Tennessee and Missouri (Chapters 167 and 168 of the Public Acts of 1949 of the Tennessee Legislature, and Revised Statutes of Missouri, Sections 234.360–234.420, V.A. M.S.) and by special act of Congress (Public Law 411, 81st Congress, Oct. 26, 1949, Chapter 758, 63 Stat. 930). Congressional approval was required by Article I, Section 10, Clause 3 of the Constitution of the United States, which provides, "No State shall, without the Consent of Congress * * * enter into any Agreement or Compact with another State * * *." The terms of the interstate compact are set out in full in each of the state acts and in the congressional act of approval. The main function of

the Commission is to plan, construct, maintain, and operate an interstate bridge near Caruthersville, Missouri, with authority granted to purchase and operate ferries across the river within 25 miles of the bridge site.

We now consider the question of whether the Commission is an entity separate and apart from the States of Tennessee and Missouri.

In Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389, the action was brought against various state officials who constituted the Department of Treasury. The action was dismissed on the basis of sovereign immunity. The Court, in support of its determination that the suit was one against the state, says (323 U.S. at page 464, 65 S.Ct. at page 350):

"* * * We have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. * * * And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. * * *"

In Kansas City Bridge Co. v. Alabama State Bridge Corp., 5 Cir., 59 F.2d 48, at pages 49–50, the action against the bridge company was held to be one against the state, the court stating:

"It is clear that the whole purpose of the act was to erect bridges essential to the highway system, to pay for them with tolls, and then to make them free for the use of the public. It is well settled that the construction of public roads and bridges is a governmental function. * * * The state may either perform this function in its own name or through its public officers or one of its governmental agencies. * * The Alabama Bridge Corporation was but an agency or instrumental-

ity through which the state acted in causing its public bridges to be constructed. It was not a private corporation in any sense of the word, but state officials, who might as well have been designated a board or commission, were ex officio members, and the only members, of it. * * * In the nature of things the state had to choose some such agency in order to effectuate its purpose. * * *"

In Cargile v. New York Trust Co., 8 Cir., 67 F.2d 585, the plaintiff brought an action against the members of the Highway Commission of the State of Arkansas, seeking to have a receiver appointed to take charge of a toll bridge. The action was held to be in effect an action against the State of Arkansas and was dismissed for want of jurisdiction. Copper S. S. Co. v. State of Michigan, 6 Cir., 194 F.2d 465, involved a suit for damages caused by a ferry boat operated across the Mackinac Straits by the State Highway Department. The action was held to be one against the state and was dismissed.

In our present case, it is apparent that the purpose of the States in entering into the compact and in carrying out the authorized activity was to perform their respective governmental obligations to furnish the public with necessary highways and bridges. The defendant Commission was the agency or instrument of the two States and not an entity separate and apart from the States. The Commission could issue no stock. It was controlled by state officials appointed by the respective governors with senate confirmation. Commission action could be authorized only upon a majority vote of the commissioners from each State. Veto power was reserved to the governors. The Commission's authorized bonds were granted exemption from income taxation. Its revenue from tolls could only be used for reasonable operating expenses and for payment of its bonds and interest, and when the indebtedness was paid the bridge was to belong to the two States and to be operated free of tolls. The Commission afforded

no opportunity for realization of private profits to anyone. It had no right to levy taxes. Its tolls were pledged exclusively for operating expenses and bond payments. Aside from the tolls, its only sources of money were the creating States and the Federal Government. It is apparent that a judgment against the Commission and a seizure of the ferry would adversely affect the participating States in the performance of their duty of providing a means of crossing the river.

Plaintiff urges that inasmuch as defendant is a creature of two States it must be a separate entity. We see no insuperable obstacle to several states using the same instrumentality to carry out a commom governmental obligation. As heretofore pointed out, the Constitution of the United States specifically provides for congressional approval of compacts between states. The approval of the compact by Congress at least lends support to the propriety of the States carrying out the project here involved jointly.

Justice Frankfurter and Dean Landis, in an article in 34 Yale Law Journal 685, discuss the compact clause of the Constitution, and in an appendix set out many instances in which compacts have been utilized. The effectiveness of the compact in solving many interstate problems is pointed out. The Port of New York Authority is an example of an interstate compact. This authority was created by New York and New Jersey with the approval of Congress, N.J.S.A. 32:1–1 et seq., 32:2–1 et seq.; McKinney's Unconsol.Laws N.Y. §§ 6401 et seq., 6451 et seq.; 42 Stat. 174. It performs harbor duties and provides bridges and tunnels connecting the two States. In Howell v. Port of New York Authority, D.C.N.J., 34 F.Supp. 797, the compact creating the Authority was discussed. In dismissing the action, the court states (at page 801):

"The Port Authority, a bi-state corporation * * * is a joint or common agency of the states of New York and New Jersey. It performs governmental functions which project beyond state lines, and it is immune from suit without its consent. * * * "

To the same effect see Rao v. Port of New York Authority, D.C.E.D.N.Y., 122 F.Supp. 595, affirmed 2 Cir., 222 F.2d 362.

We are satisfied that the defendant Commission is an instrumentality of both Tennessee and Missouri and that it is not an entity separate and distinct from the States.

Plaintiff next contends that the States have waived any immunity they might have because of the provision contained in the compact reading as follows:

"[The Commission] shall have the following powers and duties:

* * * * * *

"3. To contract, to sue and be sued in its own name; to purchase or otherwise acquire, hold and dispose of real and personal property * * * ."

Some support for plaintiff's contention that there is a tendency to give statutes authorizing suits a liberal construction is found in cases involving corporations created by the Federal Government and in Tort Claims Act suits. However, no such tendency is apparent in cases involving the waiver of sovereign immunity on the part of states. People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507; Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121; Ford Motor Co. v. Department of Treasury of Indiana, supra; Copper S. S. Co. v. State of Michigan, supra; Pacific Fruit & Produce Co. v. Oregon Liquor Control Commission, D.C.Or., 41 F.Supp. 175.

In People of Porto Rico v. Rosaly y Castillo, supra, the issue was whether the sovereign immunity defense was available to Porto Rico. It was contended that the power granted Porto Rico to sue and be sued deprived it of such immunity. The Court conceded that such words standing alone could be so construed, but stated that when they are

considered in context they could not be interpreted in such a way as to deprive Porto Rico of such a vital right as sovereign immunity. In the Read case, supra, the state had authorized suit to recover taxes illegally collected. The statute was construed to limit the waiver to suits in the state court. The Court states (322 U.S. at pages 53–54, 64 S.Ct. at page 876):

> "The principle of immunity from litigation assures the states and the nation from unanticipated intervention in the processes of government, while its rigors are mitigated by a sense of justice which has continually expanded by consent the suability of the sovereign. The history of sovereign immunity and the practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures. * * * "

The Supreme Court has stated that administrative constructions by a state of its statutes of consent influence its conclusions. Great Northern Life Ins. Co. v. Read, supra; Ford Motor Co. v. Department of Treasury of Indiana, supra.

The Supreme Court of Missouri in Todd v. Curators of University of Missouri, 347 Mo. 460, 147 S.W.2d 1063, 1064, states:

> "A statutory provision that such a public corporation 'may sue and be sued' does not authorize a suit against it for negligence. ' * * * But the waiver by the state for itself or its officers or agents of immunity from an action is one thing. Waiver of immunity from liability for the torts of the officers or agents of the state is quite another thing.' Bush v. Highway Commission, 329 Mo. 843, loc. cit. 849, 46 S.W.2d 854, loc. cit. 856. * * * "

In Tennessee, statutes permitting suits against the State are strictly construed. State ex rel. Allen v. Cook, 171 Tenn. 605, 106 S.W.2d 858; Hill v. Beeler, 199 Tenn. 325, 286 S.W.2d 868.

■ An application of the law above stated to the undisputed facts before us leads us to the conclusion that the language used in the compact, when considered in context, can not be construed to constitute a waiver of sovereign immunity as to tort liability by the States of Tennessee and Missouri. The words "to sue and be sued" immediately follow the words "to contract." There is no express waiver of tort liability, nor can such a waiver be fairly implied. It is reasonable to assume that the drafters of the compact had in mind the interpretation of their courts to the effect that the grant of a right to sue and be sued did not include a waiver of immunity as to tort liability.

■ We have determined that the suit was in effect a suit against the States of Tennessee and Missouri, and that neither of said States has waived its sovereign immunity as to tort liability. Under such circumstances, the trial court and this court are without jurisdiction to entertain this action.

■ Defendant's motion asserts that the action is in effect an action against the States, and that the court has no jurisdiction over the defendant or the subject matter of the action. While the bar of the Eleventh Amendment to the Constitution of the United States is not specifically asserted, we are inclined to think that the court's jurisdiction was sufficiently challenged. In any event, we believe that we are obligated to determine whether the Eleventh Amendment deprives this court of jurisdiction.

In Ford Motor Co. v. Department of Treasury of Indiana, supra, the Supreme Court states (323 U.S. at page 467, 65 S.Ct. at page 352):

> " * * * The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment

in this case even though urged for the first time in this Court."

The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ It has uniformly been held that federal judicial power does not extend to any suit in law or equity against a state by citizens of another state even in cases arising under the Constitution or laws of the United States. Missouri v. Fiske, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145; Great Northern Life Ins. Co. v. Read, supra; Cargile v. New York Trust Co., supra. In the case last cited this court applies the rule above stated and cites many cases supporting it.

The complaint shows the plaintiff to be a resident of Tennessee. The authorities just cited would bar a tort action against Missouri. The Amendment does not by its terms bar a citizen from suing his own state. However, the Supreme Court has squarely held that a state can not be sued without its consent in a federal court by one of its own citizens. Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. In Georgia Railroad & Banking Co. v. Redwine, 342 U.S. 299, 304, footnote 13, 72 S.Ct. 321, 96 L.Ed. 335, the decision in Hans v. State of Louisiana is recognized as properly stating the law.

■ Plaintiff contends that jurisdiction exists because of Article 3, Section 2 of the Constitution of the United States providing that judicial power shall extend to all cases in admiralty and maritime jurisdiction. This is the same section of the Constitution which confers jurisdiction over cases arising under the Constitution and laws of the United States. The Court, in the cases heretofore cited, has held that the provision granting jurisdiction over cases arising under the laws of the United States does not give a federal court jurisdiction

in a suit by a citizen against a state, and no reason is apparent why the portion of the same section of the Constitution granting admiralty jurisdiction should receive any different treatment.

In Ex parte State of New York, No. 1, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057, the Court held that a state could not be sued in admiralty for maritime tort without its consent. The Court fully discusses the reasons for upholding state immunity, and distinguishes Workman v. New York City, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314, relied upon by the plaintiff. Among other things, the Court states (256 U.S. at pages 498, 502–503, 41 S.Ct. at page 589):

"* * * In Hans v. State of Louisiana, supra (134 U.S. at page 15, 10 S.Ct. at page 507), the court demonstrated the impropriety of construing the Amendment so as to leave it open for citizens to sue their own state in the federal courts; and it seems to us equally clear that it cannot with propriety be construed to leave open a suit against a state in the admiralty jurisdiction by individuals, whether its own citizens or not. * * *

"There is no substance in the contention that this result enables the state of New York to impose its local law upon the admiralty jurisdiction, to the detriment of the characteristic symmetry and uniformity of the rules of maritime law insisted upon in Workman v. New York City, 179 U.S. 552, 557–560, 21 S.Ct. 212, 45 L.Ed. 314, * * * The symmetry and harmony maintained in those cases consists in the uniform operation and effect of the characteristic principles and rules of the maritime law as a body of substantive law operative alike upon all who are subject to the jurisdiction of the admiralty, and binding upon other courts as well. * * * It is not inconsistent in principle to accord to the states, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the

suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction."

In Ex parte State of New York, No. 2, 256 U.S. 503, 41 S.Ct. 592, 65 L.Ed. 1063, it was held that a ship owned by New York and used for governmental purposes could not be seized by admiralty process in rem in an action for damages caused by the negligent operation of the ship.

Plaintiff contends that the States are subject to federal laws regulating interstate commerce and maritime matters, and that the Jones Act was enacted pursuant to such powers.

We find nothing in the Jones Act which shows any congressional intention to make its provisions applicable when either the State or Federal Government is the employer. In the comment found in Cumulative Supplement 46 U.S.C.A. [1954 ed.] pages 57, 61, it is stated that the Jones Act applies only to vessels of private ownership or operation. The Federal Government has power to regulate interstate commerce and maritime activities. However, such power is not broad enough to authorize any federal legislation which would impair the constitutional immunity granted states from suits by citizens against such states in federal courts. If the Jones Act were construed to impose tort liability upon states for injuries to its seaman employees, there is grave danger that such a provision would conflict with the Eleventh Amendment. Ambiguous statutes are generally construed in such a way as to preserve their constitutionality.

United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, relied upon by the plaintiff, is not in conflict with the result we reach. The action in that case was brought by the United States and not by an individual, and hence no conflict with the Eleventh Amendment arises in that case.

We conclude that the trial court, by reason of the provisions of the Constitution, and particularly the Eleventh Amendment, had no jurisdiction of this suit, brought in effect against the States of Tennessee and Missouri. The trial court properly dismissed the action for want of jurisdiction.

Affirmed.