**REPUBLIC OF IRAQ, Plaintiff,**

v.

**FIRST NATIONAL CITY TRUST COMPANY, as Administrator of the Goods, Chattels, and Credits of His Majesty King Faisal II Ibn Ghazi Ibn Faisal I of Iraq, Deceased, Defendant.**

United States District Court
S. D. New York.

Aug. 14, 1962.

Fennelly, Douglas, Eagan, Nager & Voorhees, New York City, Leo C. Fennelly, Edward P. F. Eagan, New York City, of counsel, for plaintiff Republic of Iraq.

Harold J. Baily, New York City, for defendant First National City Trust Co.

Woodson D. Scott, Lord, Day & Lord, New York City, for Lony Arnault and Arolan Co., claimant against the Estate of King Faisal II in the Surrogate's Court.

Edwin McMahon Singer, New York City, for Al Malika Genevieve of Iraq.

Nicholas P. Iannuzzi, New York City, special guardian for unknown heirs and next of kin.

BONSAL, District Judge.

On March 9, 1962 the Republic of Iraq, a sovereign power duly recognized by the United States of America on or about August 2, 1958, instituted this ac-

tion by filing a complaint against the defendant First National City Trust Company, as administrator of the goods, chattels and credits of His Majesty King Faisal II Ibn Ghazi Ibn Faisal I of Iraq, deceased. In its complaint the Republic of Iraq alleges that the defendant, as administrator, is holding goods, chattels and credits of a value in excess of $100,000. which are the property of the plaintiff Republic of Iraq and to which plaintiff is entitled. Plaintiff demands judgment for the recovery of the property.

The defendant in its answer filed in this Court on April 2, 1962, alleges that it was appointed administrator of the Estate of the late king by the Surrogate's Court, New York County, on October 9, 1958 and is still acting as such. Defendant denies the material allegations of the complaint and prays that it be dismissed.

The defendant now moves for an order transferring the action to the Surrogate's Court of New York County for trial and determination by that Court. In support of its motion defendant states that proceedings have already been taken in the Surrogate's Court, including the filing of claims of creditors and claims of persons claiming to be distributees of the estate. Defendant also alleges that it filed its petition and account as administrator on March 9, 1962, and that a citation was duly issued on that date and served on all parties and claimants having an interest in the estate, including the plaintiff Republic of Iraq, which was served on March 12, 1962. The service of citation on the Republic of Iraq appears to have been made three days after the filing of plaintiff's complaint herein and four days prior to the service of the summons and complaint on defendant on March 16, 1962.

Thereafter, defendant, on notice to all parties, including the plaintiff, applied to the Surrogate's Court of New York County for an order of that Court consenting to the transfer of this action to it for hearing and determination. Plaintiff Republic of Iraq appeared "specially" to oppose this application, which was granted by order of the Honorable S. Samuel Di Falco, Surrogate, on July 2, 1962.

In support of its application for transfer, defendant cites the familiar provisions of the New York statutes granting to the Surrogate's Court general jurisdiction in the administration of the estates of decedents. It also refers to the well-established doctrine that the Federal courts will not interfere with the carrying out by the State courts of their statutory duties. Beach v. Rome Trust Co., 269 F.2d 367 (2d Cir. 1959); Sullivan v. Title Guarantee & Trust Co., 167 F.2d 393 (2d Cir. 1948).

Defendant also contends that the Republic of Iraq, by instituting an action in this Court, has subjected itself to the jurisdiction not only of this Court but also to the laws of the United States and the State of New York, and to the jurisdiction of any court to which this suit may lawfully be transferred. In support of this proposition, defendant cites National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955).

The plaintiff Republic of Iraq has filed a memorandum in opposition to the motion, in which it states that this Court has no jurisdiction to transfer an action instituted by a sovereign power to another court. Plaintiff further contends that National City Bank of New York v. Republic of China, supra, is authority only for the limited proposition that where a foreign sovereign institutes an action in a United States court it has waived its sovereign immunity to any offsets that may properly be asserted in the same suit which it has brought.

The defendant has cited no case in which a foreign sovereign which has instituted an action in a Federal court has been required to accept the jurisdiction of a State court, and the Court has found none.

It is true that the doctrine of sovereign immunity as first laid down by Chief Justice Marshall in The Schooner Ex-

change v. McFaddon, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812) has been considerably modified in the twentieth century. The sovereign is no longer personalized in the person of a king. Modern governments engage in commercial activity on a scale never dreamed of at the time of Chief Justice Marshall's famous decision. Moreover, acts of foreign sovereigns decreed in their own territory in violation of principles of international law may have a direct effect on the property rights and claims of citizens of the United States within the territory of the United States. (Cf. Banco Nacional de Cuba v. Sabbatino et al., 193 F.Supp. 375 (S.D.N.Y.1961) aff'd. 307 F.2d 845 (2d Cir. 1962). Today foreign governments find themselves often in direct competition with American business enterprises. All of these factors have contributed to a relaxation of the application of the doctrine of sovereign immunity. Garcia-Mora, Doctrine of Sovereign Immunity of Foreign States and Its Recent Modifications, 42 Va.L.Rev. 335 (1956); see also Timberg, Sovereign Immunity, 56 Nw.U.L.Rev. 109 (1962). Indeed, some authors urge that the doctrine be abolished altogether. Among them was the late Professor Lauterpacht who, before becoming a judge of the International Court, wrote a distinguished article on "The Problem of Jurisdictional Immunities of Foreign States" (28 British Yearbook of Int'l. Law 220 (1951)). After tracing the history of the doctrine in various countries and the difficulties which had arisen in its application, no matter how modified, Professor Lauterpacht concluded that the doctrine should be abolished "subject to specified safeguards and exceptions". Such abolition, he thought, could be achieved "either by way of international agreement or by unilateral legislative action of states which have subjected their own governmental organs to the jurisdiction of their courts and which may decide to put on the same basis the position of governmental instrumentalities of foreign states". Lauterpacht, supra, at 237.

No such abolition has yet been achieved, and Professor Lauterpacht concedes that the courts of the United States continue to apply the doctrine, "subject to significant indications of change". He adds, "while it is probable that courts of subordinate jurisdiction in the United States would still deem themselves bound by the traditional doctrine of absolute immunity as reaffirmed by the Supreme Court, it is not certain what * * * may be the attitude of that high tribunal in the future." Lauterpacht, supra, at 269.

That the doctrine of sovereign immunity is still very much alive in this country is evidenced by the detailed treatment accorded it in chapter 4 of The American Law Institute's recent Restatement, "The Foreign Relations Law of the United States", adopted at its May 1962 Annual Meeting.

The rationale of the doctrine of sovereign immunity is that the judicial branch of the Government should not interfere with the conduct of the foreign policy of the United States by creating differences, disputes or misunderstandings between sovereign states with resulting possible political consequences.

In the application of the doctrine of sovereign immunity under international law, distinction has been made between acts of state which are *jure imperii* and those which are *jure gestionis*. The former are acts of sovereignty, and the latter are acts of private law, and it is argued that sovereign immunity should apply only where acts of sovereignty are involved. The lines are often difficult to draw, but there is no doubt that here we have an alleged act of sovereignty by the Republic of Iraq. Thus, in the instant case the Republic of Iraq could have stood on its sovereign immunity, treated as void any determination of the Surrogate's Court and made a claim on the United States for property involved. However, it chose to waive its sovereign immunity to the extent of bringing this action and leaving it to the Court to adjudicate its claim. It may well be argued that the waiver, once

made, was a waiver for all purposes, including the transfer of its claim to another court. See Garcia-Mora, supra, at pg. 338. Note, Procedural Aspects of a Claim of Sovereign Immunity by a Foreign State, 20 U.Pitt.L.Rev. 126 (1959). The Court does not agree. In its opinion, under the present state of the law, the waiver operated only to subject the Republic of Iraq to the jurisdiction of *this Court* for the purpose of determining its claim against the defendant. It should be noted that by appearing specially to oppose the application of the defendant in the Surrogate's Court the Republic of Iraq did not waive its sovereign immunity with respect to proceedings in that Court. Fields v. Predionica I Tkanica, A.D., 263 App.Div. 155, 31 N.Y.S.2d 739 (1941), appeal dismissed, 290 N.Y. 740, 49 N.E.2d 1007 (1943).

The reliance of the defendant on National City Bank of New York v. Republic of China, supra, is misplaced. There the Republic of China (as the Republic of Iraq here) waived its sovereign immunity by instituting an action in the Federal Court, to which the defendant interposed a counterclaim. In his opinion Mr. Justice Frankfurter pointed out that it would be contrary to our notions of justice, public morality and fair play to permit the Republic of China to collect its claim and deny the defendant's right to counterclaim. The same right would naturally be accorded to the defendant in this case. (See Restatement, The Foreign Relations Law of the United States, § 73(2), supra.)

Totally apart from the question of sovereign immunity, the defendant has shown no valid reason why this Court should transfer the litigation to the Surrogate's Court. The Republic of Iraq is not a claimant to the former king's estate. It asserts in its complaint that upon the death of the king the Republic succeeded him. The Republic of Iraq is claiming by right of state succession and not by inheritance. The claim of the Republic of Iraq must stand or fall on whether it can prove its right to the property by state succession. The complaint fails to disclose on what law the Republic of Iraq is relying. It is stated in one of the supporting affidavits that the Republic of Iraq is relying on a decree promulgated after the king's death. This may raise questions of public policy as to whether such a decree will be recognized by the Court. But this must await the trial of the action. Defendant's motion is denied.

So ordered.