## COMPANIA ESPANOLA DE NAVEGACION MARITIMA, S. A., *v.* THE NAVEMAR ET AL.

No. 242. Argued January 7, 10, 1938.—Decided January 31, 1938.

Mr. *T. Catesby Jones,* with whom *Messrs. D. Roger Englar, Oscar R. Houston,* and *James W. Ryan* were on the brief, for petitioner.

*Mr. Charles W. Hagen,* with whom *Messrs. Anthony V. Lynch, Jr.,* and *Horace T. Atkins* were on the brief, for the Spanish Ambassador, respondent in this Court.

MR. JUSTICE STONE delivered the opinion of the Court.

In a suit in admiralty, brought in a district court by the alleged owner to recover possession of a Spanish merchant vessel, the Spanish Ambassador asked leave to intervene as claimant on the basis of an affidavit of the Spanish Acting Consul General suggesting that when the suit was brought the vessel was the property of the Republic of Spain, by virtue of a decree of attachment promulgated by the President of the Republic, appropriating the vessel to the public use, and that it was then in the possession of the Spanish Government. The principal question for decision is whether it was the duty of the court, upon presentation of the suggestion, to dismiss the libel for want of admiralty jurisdiction.

Petitioner, a Spanish corporation, brought the present suit in admiralty in the district court for eastern New York against the Spanish steamship "Navemar," five members of her crew, and all persons claiming an interest in her, to recover possession of the vessel. The libel alleged that petitioner was owner of the vessel, which was within the territorial jurisdiction of the court; and that while she was in petitioner's possession the individual respondents, acting as a committee of the crew, had wrongfully and forcibly seized, and had since retained possession of the vessel. After hearing evidence in support of the petition, the district court rendered its decree upon default, directing the marshal to place libelant in possession.

Thereupon the Spanish Ambassador filed a suggestion in the cause, challenging the jurisdiction of the court on the ground that the "Navemar" was a public vessel of the Republic of Spain, not subject to judicial process of the court, and asking that it direct delivery of the

vessel to the Spanish Acting Consul General in New York. The suggestion alleged that when the suit was brought the "Navemar" was the property of the Spanish Government by virtue of its decree of October 10, 1936, and was in the possession of the Republic of Spain. The district court issued its order to show cause why the default should not be opened and the Ambassador permitted to appear specially as claimant of the vessel. After a hearing the court denied the application but with leave to the Ambassador to make further application upon fuller presentation of the facts showing the ownership and possession of the vessel by the Spanish Government.

Meanwhile the Department of State had refused to act upon the Spanish Government's claim of possession and ownership of the "Navemar," had declined to honor the request of the Ambassador that representations be made in the pending suit by the Attorney General of the United States in behalf of the Spanish Government, and had advised the Ambassador that his Government was entitled "to appear directly before the court in a case of this character."

A second application by the Ambassador for leave to appear as a claimant upon a verified suggestion, stating additional circumstances relied upon to establish possession of the vessel by the Republic of Spain, was denied. 18 F. Supp. 153. On appeal the Court of Appeals for the Second Circuit, after restricting the appeal to the order of the district court on the second application, reversed that order and directed that the libel be dismissed. 90 F. (2d) 673. We granted certiorari, because the case is of public importance and because of alleged conflict of the decision below with our decision in *The Pesaro*, 255 U. S. 216, and with that of the Court of Appeals for the Fourth Circuit in *The Attualita*, 238 Fed. 909.

Respondent's suggestion on the second application presented two contentions: one, a challenge to the jurisdic-

tion on the ground that the "Navemar" was a public vessel, immune from arrest and process of the court; the other, that the Spanish Government was owner of the vessel and entitled to her possession by virtue of the decree of attachment.

In addition to the general allegations of ownership and possession of the vessel by the Spanish Government in the first application, the suggestion in the second set up the acquisition of possession in behalf of the Spanish Government by specific acts of its consular officers in Argentina and in New York. It alleged that on October 26, 1936, the Spanish Consul at Rosario, Argentina, had endorsed on the ship's roll a statement that "Through a cable dated 26 of the inst month from the Director General of the Merchant Marine this ship has become the property of the State through attachment according to the Decree of Oct. 10, 1936," and that on October 28 the Spanish Acting Consul General at Buenos Aires had made a similar endorsement on the ship's register. It was also alleged that on arrival in New York in November the Spanish Acting Consul General at that port, by direction of the Ambassador, had instructed the master of the "Navemar" "to await and abide further instructions . . . as regards any further use of the" vessel, and that on November 28 he had instructed the master to render a detailed account of the expenses of the "Navemar" and of minor repairs that she might require. There was no averment that the alleged seizure by the members of the crew was an act of or in behalf of the Spanish Government.

The district court allowed a full hearing upon the suggestion and upon reply affidavits submitted by libelant, in the course of which there was opportunity for the parties to present proof of all the relevant facts. Cf. *Ex parte New York*, 256 U. S. 503. The court found that no one had taken possession of the "Navemar" in behalf

of the Spanish Government. It pointed out that neither the ship's roll nor its register is a document of title or possession, the ship's roll being merely a record, in the case of Spanish vessels usually deposited with the Spanish consul while in port, showing arrivals and sailings of the vessel, the kind of cargo carried, the list of passengers, and the enrollment of the members of the crew, and the ship's register being only a record of the nationality of the vessel as determined by the place of her home port. It found that none of the consular officers mentioned had done any act purporting to take possession of the vessel; that none of them had informed the master that he wished to take possession or had any intention of doing so; that the vessel had proceeded under command of her master upon her voyage from Buenos Aires to New York, manned by officers and crew in the employ of petitioner; that upon arrival, the master, under direction of the ship's agent, had discharged cargo; and that before discharge the freight money was paid by the consignees to the agents of the time charterer in New York.

The district court, upon this and other evidence not necessary to detail, concluded that the "Navemar" was never in possession of the Spanish Government before her seizure by the members of the crew in the territorial waters of the United States, and that she was not a vessel in the public service of the Spanish Government.

The Court of Appeals, without reviewing the findings of the district court, or the evidence, adverted to the allegation of the first suggestion, substantially repeated on information and belief in the second, that the Spanish Consul at Rosario "pursuant to instructions from the Director General of the Spanish Merchant Marine, took possession of the . . . Navemar in the name of the Republic of Spain . . . whereby the . . . Navemar then and there became and at all times since has remained the property of the Government of the Republic of Spain."

Declaring that the court was bound to accept this allegation as conclusive, it held that the vessel must be taken to be a public vessel owned by and in the possession of the Spanish Government, and as such immune from suit in the courts of the United States.

This we think was a mistaken view of the force and effect of the suggestion. Admittedly a vessel of a friendly government in its possession and service is a public vessel, even though engaged in the carriage of merchandise for hire, and as such is immune from suit in the courts of admiralty of the United States. *Berizzi Bros. Co.* v. *The Pesaro,* 271 U. S. 562; cf. *The Exchange,* 7 Cranch 116. And in a case such as the present it is open to a friendly government to assert that such is the public status of the vessel and to claim her immunity from suit, either through diplomatic channels or, if it chooses, as a claimant in the courts of the United States.

If the claim is recognized and allowed by the executive branch of the government, it is then the duty of the courts to release the vessel upon appropriate suggestion by the Attorney General of the United States, or other officer acting under his direction. *The Cassius,* 2 Dall. 365; *The Exchange, supra; The Pizarro,* 19 Fed. Cas. No. 11,199; see *The Constitution,* L. R. 4 P. D. 39; cf. *Ex parte Muir,* 254 U. S. 522; *The Parlement Belge,* L. R. 4 P. D. 129. The foreign government is also entitled as of right upon a proper showing, to appear in a pending suit, there to assert its claim to the vessel, and to raise the jurisdictional question in its own name or that of its accredited and recognized representative. *The Sapphire,* 11 Wall. 164, 167; *The Anne,* 3 Wheat. 435, 445–446; *The Santissima Trinidad,* 7 Wheat. 283, 353; *Colombia* v. *Cauca Co.,* 190 U. S. 524; *Ex parte Transportes Maritimos,* 264 U. S. 105; *Berizzi Bros. Co.* v. *The Pesaro, supra.*

After refusal of the Secretary of State to act upon the present claim, the Ambassador adopted the latter course.

His application to be permitted to appear and present the claim was properly entertained by the district court. But it was not bound, as the Court of Appeals thought, to accept the allegations of the suggestion as conclusive. The Department of State having declined to act, the want of admiralty jurisdiction because of the alleged public status of the vessel and the right of the Spanish Government to demand possession of the vessel as owner if it so elected, were appropriate subjects for judicial inquiry upon proof of the matters alleged.

But the filed suggestion, though sufficient as a statement of the contentions made, was not proof of its allegations. This Court has explicitly declined to give such a suggestion the force of proof or the status of a like suggestion coming from the executive department of our government. *Ex parte Muir, supra; The Pesaro, supra. Berizzi Bros. Co. v. The Pesaro, supra,* did not hold otherwise for there it was stipulated that the vessel, when arrested, was owned, possessed and controlled by a foreign government and used by it in carrying merchandise for hire. The sole question was one of law, whether, upon the facts stipulated, the vessel was immune from suit.

The district court concluded, rightly we think, that the evidence at hand did not support the claim of the suggestion that the "Navemar" had been in the possession of the Spanish Government. The decree of attachment, without more, did not operate to change the possession which, before the decree, was admittedly in petitioner. To accomplish that result, since the decree was *in invitum,* actual possession by some act of physical dominion or control in behalf of the Spanish Government, was needful, *The Davis,* 10 Wall. 15, 21; *Long* v. *The Tampico,* 16 Fed. 491, 493, 494; *The Attualita, supra; The Carlo Poma,* 259 Fed. 369, 370, reversed on other grounds, 255 U. S. 219, or at least some recognition on the part of the ship's officers that they were controlling the vessel and crew in

behalf of their government.[1]   Both were lacking, as was support for any contention that the vessel was in fact employed in public service.   See *Long* v. *The Tampico, supra,* 493, 494; cf. *Berizzi Bros. Co.* v. *The Pesaro, supra.*

The district court rightly declined to treat the suggestion as conclusive or sufficient as proof to require the court to relinquish its jurisdiction.   But as the suggestion was tendered in support of an application to appear as a claimant in the suit, and as it put forth a claim to title and right to possession of the vessel, the Ambassador should have been permitted to intervene and, if so advised, to litigate its claims in the suit.   In *Ex parte Muir, supra,* and in *The Pesaro, supra,* 219, the Ambassador of the intervening government challenged the jurisdiction of the court, but did not place himself or his Government in the attitude of a suitor.   Here the application as construed by the trial court was for permission to intervene as a claimant.   We think the applicant should be permitted to occupy that position if so advised.

The decree of the Court of Appeals will be reversed. The respondent will be permitted to intervene for the purpose of asserting the Spanish Government's ownership and right to possession of the vessel, and the order of the district court will be modified accordingly.

*Reversed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

[1] In The Jupiter, 1924 P. 236, 241, 244 (cf. The Jupiter No. 2, 1925 P. 69; The Jupiter No. 3, 1927 P. 122, 125), and in the recently reported The Cristina, 59 Lloyd's List Law Reports 43, 50, on which respondent relies, the possession taken in behalf of the claimant government was actual.   The judgment in The Cristina appears to have proceeded on that ground.   In The Jupiter, it appeared that before the suit was brought the master had repudiated the possession and ownership of the plaintiffs and held the vessel for the claimant government.   The report of The Cristina in the Admiralty Division, 59 Lloyd's List Law Reports 1, 3, indicates that the master and crew were in the pay of the Spanish Government.