## SULLIVAN v. STATE OF SAO PAULO.

### No. 1457.

District Court, E. D. New York.

Jan. 9, 1941.

Morris F. Goldstein, of New York City (Isidor J. Kresel, Morris F. Goldstein, Wm. Peyton Marin, and Abraham P. Inselstein, all of New York City, of counsel), for plaintiff.

Delafield, Marsh, Porter & Hope, of New York City (Wilmurt B. Linker and Ramon Siaca, both of New York City, of counsel), for the United States of Brazil and State of Sao Paulo.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Mario Pittoni, Asst. U. S. Atty., of Lynbrook, N. Y., of counsel), for the United States.

MOSCOWITZ, District Judge.

This is a motion made on behalf of the defendant, The State of Sao Paulo, one of the Federated States of the United States of Brazil and by the Government of the United States of Brazil appearing specially, to dismiss the complaint and vacate the warrant of attachment and the order for the publication of the summons based thereon. The action in which this motion is made has been removed from the New York Supreme Court and is one brought by a holder of bonds issued by the State of Sao Paulo whereby he seeks payment of principal and interest.

The warrant of attachment had been issued by the New York state court on April 25, 1940 and was served upon the fiscal agent of the defendant State, in the United States. Based thereon, the New York Supreme Court issued an order of service by publication on May 17, 1940.

Subsequent to the commencement of this action the Brazilian Ambassador to the United States sent a letter, dated July 11, 1940, to the State Department of the United States in which he asserted the alleged immunity of the State of Sao Paulo from suit and the alleged immunity from attachment of the funds upon which jurisdiction in this action is sought to be predicated. After receiving this letter of the Brazilian Ambassador, the State Department requested the United States Attorney for the

Eastern District of New York to submit a written suggestion to this court with respect to the claim of immunity asserted in that letter. The United States Attorney in accordance with the request of the State Department has presented to this court a suggestion embodying the diplomatic representations of the Brazilian Ambassador to the United States Secretary of State.

The issue thus raised is one of the sovereign immunity of the defendant state from suit and the immunity of the funds from attachment by reason thereof and by reason of the alleged interest of the United States of Brazil therein, which will be discussed below in more detail. It has been a well-established principle of law that a sovereign is immune from suit without its consent. To achieve this immunity the device of a suggestion has been utilized. The foreign state makes representations to our State Department which in turn conveys a suggestion of immunity to the court through the representative of the United States Government. In Compania Espanola v. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 434, 82 L.Ed. 667, the United States Supreme Court said with respect to the claim of a foreign sovereign: "If the claim is recognized and allowed by the Executive Branch of the government, it is then the duty of the courts to release the vessel upon appropriate suggestion by the Attorney General of the United States, or other officer acting under his direction." Thus in a government like ours based upon separation into executive, legislative and judicial branches, a court must, insofar as a claim is recognized by the State Department, give full acceptance to that recognition.

In order to obtain clarification as to the extent to which the State Department had recognized and allowed the claim of the United States of Brazil and its Federated State in causing a suggestion to be presented to the court, correspondence has been had with the State Department. On October 24, 1940, the State Department addressed a letter to this court which substantially summarized its prior letters. This communication reads as follows: [1]

From this letter it is evident, first, that no diplomatic relations exist between the United States and the State of Sao Paulo. Diplomatic relations exist only with the United States of Brazil. In short, the State of Sao Paulo as a Federated State lacks "external sovereignty" which the State Department's letter indicates rests in the Federal Government alone. Secondly, that letter makes it evident that the State Department has accepted as true the statements contained in the aforementioned letter of the Brazilian Ambassador, even though the Department of State has taken the position that the ultimate legal question of sovereign immunity was one to be left for the determination of this court.

---

[1] "Department of State
"Washington
"October 24, 1940

"The Honorable
Grover M. Moscowitz,
United States Court,
Eastern District of New York,
Brooklyn, New York.
"My dear Judge Moscowitz:
"The Department has received your letter of October 17, 1940 concerning the cases of John J. Sullivan v. State of Rio Grande do Sul, Civil—1456, and John J. Sullivan v. The State of Sao Paulo, Civil—1457. You inquire concerning the action of the Department in asking the Attorney General to have a copy of the note of July 11, 1940 from the Brazilian Ambassador concerning these cases presented to the Court.

"As you know, this Government, with regard to Brazilian matters, deals directly with the Federal Government of the United States of Brazil and not with the governments of the separate States thereof. However, the Department, in asking the Attorney General of the United States to have the note of July 11, 1940 from the Brazilian Ambassador presented to the court, had no doubt as to the accuracy of the statements contained therein as to the status of the Brazilian States of Rio Grande do Sul and Sao Paulo and their relation to the Federation of the United States of Brazil, under the Constitution thereof; likewise the statements contained in the same note concerning the ownership and disposition of the funds in question.

"As to the question whether the States of Rio Grande do Sul and Sao Paulo are entitled to sovereign immunity, and the question whether such immunity should be extended to the funds referred to, you are informed that it is the practice of the Department to leave such questions for determination by the courts, applying the principles of international law to the facts and circumstances of the particular cases.

"Sincerely yours,
"For the Secretary of State:
"R. Walton Moore
"Counselor"

Subsequently, namely, on November 22, 1940, the State Department addressed a further letter to this court which reads as follows:[2]

In view of the importance of this correspondence received subsequent to the argument of the motion, the court held a further hearing on November 28, 1940, in order that counsel might have adequate opportunity to give full expression to their views. Time was also allowed for supplemental briefs which have been submitted.

At the supplemental hearing held before this court the issue to which the argument was primarily directed was the extent to which this court is bound by the statement of facts contained in the letter of the Brazilian Ambassador in view of the statement of the State Department that it has accepted as true the various facts set forth in that letter. Obviously, if these facts are accepted as true and are adequate to determine the issue of sovereignty or the sovereign immunity of the funds attached, the court is in a position to determine the matter without further hearing on the facts.

As pointed out above, the United States Supreme Court has said in the Navemar case that where the executive "recognize[s] and allow[s]" the claim of the foreign sovereign it is the duty of the court to give effect to the claim of immunity. The purport of such a rule is to grant to the foreign sovereign the privilege of immunity from suit in the municipal courts of another nation where, in the normal course of diplomatic relations, the executive branch of the latter has seen fit to recognize the claim of the foreign sovereign. Friendly intercourse between nations demands that a sovereign not be called upon to litigate its rights in the same manner as a private litigant where its diplomatic relations have been given recognition.

If, where the claim of immunity is recognized and allowed by the executive, the court must relinquish jurisdiction, it is difficult to see why the same finality should not be given to the sovereign's presentation of facts where the same has been accepted as true by the executive branch of the government, as has been done herein. The same theories upon which one rests, are the basis of the other. If the word of a sovereign is not to be questioned where accepted by the executive, then the rule applies equally to the case where the executive accepts as true only the facts, and by reason of lack of desire to usurp judicial functions does not pass upon the ulti-

---

[2] "Department of State

"Washington

"November 22, 1940

"The Honorable
   Grover M. Moscowitz,
     Judge, United States Court,
      Eastern District of New York,
      Brooklyn, New York.

"Sir:

"I am in receipt of your letter of November 18, 1940 in connection with the cases of John J. Sullivan v. The State of Rio Grande do Sul, Civil, 1456, and John J. Sullivan v. The State of Sao Paulo, Civil, 1457, and recent correspondence on the subject. You inquire whether the Department has 'recognized and allowed' the claim of immunity made by the United States of Brazil by reason of its claimed interest in the funds in question.

"The Department's earlier statements on this subject were not intended to indicate that it had 'recognized and allowed' the claim of immunity as a conclusion of law, but rather were intended, as indicated, to show that the Department felt that a prima facie case had been made out by the Government of Brazil, which justified the Department in having the statements presented to the court for its consideration. The Department's action necessarily implied an acceptance, as true, of the statements of fact made by the Brazilian Government. It was felt, however, that the ultimate decision of the question of immunity, in view of the political status of the States of Rio Grande do Sul and Sao Paulo, and of the relationship of the Brazilian Government to the funds in question, should be left to the court. The action taken by the Department in these cases was similar to that taken in other cases where the Department felt that there was merit to the contention of the foreign government but did not undertake to pass upon such contention as a conclusion of law. I may state, however, that, aside from the question of the political status of the two defendant States, it is the view of the Department that the interest of the Government of Brazil in the funds, as explained in the Brazilian Ambassador's note of July 11, 1940, is of such character as to entitle them to immunity from attachment by private litigants.

"Very truly yours,

"For the Secretary of State:

"R. Walton Moore

"Counselor."

mate legal question of immunity. In fact the number of cases where the executive has made outright demand for release of sovereign property are very few. The Schooner Exchange v. McFaddon, 7 Cranch 116, 3 L.Ed. 287, is an example. Such instances are, however, the exception and in most cases only a suggestion has been filed. If therefore a suggestion is not given effect beyond what the plaintiff contends, then it has little or no value.

The plaintiff has attempted to lay much stress on the statements in the letter of the State Department dated November 22, 1940, that a prima facie case was made for immunity. The plaintiff seeks to infer that there was implied in the use of that phrase the plaintiff's right to rebut the defendant's statements. As the court reads the language of the State Department, that language meant nothing more than what has just been indicated, namely, that the defendant established its factual case via the diplomatic representations of the Brazilian Ambassador, with legal determinations left to the court. To place upon the language the interpretation that the facts as set forth could be challenged or shown to be inadequate, after the same had been accepted as true by the executive, would fail to give full recognition to the word of a sovereign government, the United States of Brazil.

Plaintiff has cited several authorities purported to justify his position with respect to his right to a hearing on the facts. Most significant among these cases is Lamont v. Travelers Ins. Co., 281 N.Y. 362, 24 N.E.2d 81, wherein the New York Court of Appeals held that the mere transmittal of a suggestion by the State Department was not a recognition or allowance of the claim as to be binding upon the court, and constituted a mere assertion without proof that certain property belonged to the sovereign, leaving to the court the problem of examining the claim.

Aside from the fact that the State Department has by its letters indicated that the claims had factual support and hence were more than mere assertions without proof, this court, while inclined to give great respect to a decision of the New York Court of Appeals, is of the opinion that that decision fails to give full recognition to the principles outlined in Compania Espanola v. The Navemar, supra. As pointed out by Professor Deak in his article "The Plea of Sovereign Immunity and the New York Court of Appeals" (1940) 40 Columbia Law Review 453, the position taken in the Lamont case fails to give full recognition to the doctrine of sovereignty, and may produce the very controversies which the doctrine of sovereign immunity is seeking to avoid in the interest of friendly relations among nations.

Since the facts are to be accepted by the court it now becomes necessary to construe the various facts set forth by the Brazilian Ambassador which have been accepted as true by the State Department.

It appears that by reason of the world economic depression and its effects upon Brazilian finances generally, the Brazilian Government by decree of September 28, 1931, took over the fiscalization of all foreign exchange transactions. The Government suspended service on its external debt as well as that of its several states and entities except for payments in script of certain of its funding loans.

In 1934 as a result of an improvement in the international trade in Brazil, the Brazilian Government provided for the resumption of service on its external debts as well as that of certain of its states and other political entities in accordance with a classification and schedule of payments provided in a decree of February 5, 1934. Pursuant to this plan known as the Aranha Plan, the states and entities were obligated to include in their respective budgets appropriations to cover full service of their external debts in milreis. These amounts were to be deposited in the Bank of Brazil or other depositary banks approved by the Government of Brazil, to the order of said Government. Against payment in milreis out of these deposits, the Bank of Brazil would furnish in due time the necessary bills of exchange required to make the remittances contemplated by the plan.

In making these remittances the Bank of Brazil or some other financial agency would generally remit for the account of the Government of Brazil, and it was understood by the fiscal agents that no disposition could be made of these funds except in accordance with the directions of the Government of Brazil. In 1937 the Brazilian Government under pressure of unfavorable economic conditions was compelled to suspend this service, but a further plan was developed in 1940, and the transfer of funds necessary for the execution of this arrangement was likewise committed to the Bank

of Brazil for remittance to the respective fiscal agents.

The letter of the Brazilian Ambassador then went on to set forth the relationship of the State of Sao Paulo to the Federal Government, explaining that Brazil is a Federated State consisting of an indissoluble union of States of which Sao Paulo is one. The individual States have exclusive competence to determine the laws and regulations by which they govern themselves, subject to such regulations expressed or implied as may be contained in the Federal Constitution. The general relationship of the individual States to the Federal Government is analogized to that of the States of the United States of America to the United States of America.

The claim of immunity which is made herein is based therefore upon two separate propositions, first the alleged interest of the sovereign itself (Brazil) in the fund, and secondly, the alleged sovereign nature of Sao Paulo, the owner. So far as the first is concerned it is apparent that the interest of the United States of Brazil is more than a passing interest of the fiscal funds of a State, it bears directly upon the entire financial structure of the United States of Brazil and its control over external credits. Although ownership may generally be in the State of Sao Paulo the extent of control by the United States of Brazil over these external credits and the repercussions upon Brazilian finances of the attachment of these funds make the interest of the sovereign most substantial and leads the court to the conclusion that the interest is such as to entitle the funds to sovereign immunity. In this conclusion the court has the support of the State Department which in its letter of November 22, 1940, said: "I may state, however, that, aside from the question of the political status of the two defendant States, it is the view of the Department that the interest of the Government of Brazil in the funds, as explained in the Brazilian Ambassador's note of July 11, 1940, is of such character as to entitle them to immunity from attachment by private litigants." In view of this determination it is not necessary to decide whether the State of Sao Paulo is entitled to sovereign immunity.

The court feels, however, that on the facts as outlined by the Brazilian Ambassador, the State of Sao Paulo should be accorded by this court the rights of sovereign immunity. Sao Paulo is akin to a State of the United States which has been recognized as possessing sovereign immunity. While the absence of external sovereignty on the part of the State of Sao Paulo puts this court under no obligation as a matter of international law to accord sovereign immunity to the State of Sao Paulo, yet as a matter of comity and reciprocal treatment, the court is of the opinion that Sao Paulo should be recognized as possessing sovereign immunity. An analogy can be drawn perhaps to the recognition of foreign judgments as a matter of comity, as contrasted to State judgments which are governed by the superimposed full faith and credit clause of the United States Constitution. Here, international law does not compel the recognition, but under the doctrine of comity, immunity should be granted. A very interesting discussion upon the subject of sovereign immunity appears in the opinion of Judge Clark of the United States Circuit Court of Appeals for the Second Circuit, in the case of Julius I. Puente v. Spanish National State, 116 F.2d 43, decided December 6, 1940.

The motion is granted in all respects.

Settle order on notice.