## THE BAJA CALIFORNIA.
### No. 1961–BH.

District Court, S. D. California, Central Division.

June 29, 1942.

McCutchen, Olney, Mannon & Greene, Harold A. Black, and Richard H. Peterson, all of Los Angeles, Cal., for libelant.

Ben Van Tress and James R. Jaffray, both of Los Angeles, Cal., for respondents and claimant.

HARRISON, District Judge.

This is an action in admiralty, wherein the Mexican Steamship "Baja California" was libeled for the loss of the schooner "Lottie Carson" as the result of a collision occurring in Mazatlan Harbor, October 19, 1941.

The facts, except in certain particulars which will hereinafter be discussed in some detail, are not in serious dispute. On the 19th day of October, 1941, the "Lottie Carson", a conventional three masted schooner, which had been refitted as a mother ship for shark fishing, was anchored in Mazatlan Harbor, under the direction of the Port Pilot. The "Lottie Carson" was equipped with auxiliary power consisting of two fifty-five horsepower heavy duty gasoline engines, but which were out of commission at the time of the collision, which fact was known by the port officials.

At 11 o'clock A. M., the captain and libelant herein was advised that a ship in the harbor was on fire and immediately proceeded to the "Lottie Carson" and there saw the steamer "Campeche" on fire. The "Campeche" was located about 1,500 feet from the "Lottie Carson", close to the center of the entrance to the narrow Mazatlan Harbor. The wind was such that there appeared to be little danger to the "Lottie Carson" from fire. Thereafter, the "Baja California" tied into the stern of the "Campeche" with a long tow line and attempted to beach the "Campeche". In doing so the "Baja California" attempted to tow the "Campeche" on the portside of the "Lottie Carson". In this attempt she found herself in danger of running aground and in order to protect herself cut the tow line and left the "Campeche" adrift close to the "Lottie Carson", and in about three minutes the stern of the "Campeche" collided with the "Lottie Carson", resulting in her total loss.

At the time, and immediately prior thereto, the harbor tug "Tepic" was attempting to move the "Lottie Carson" from the danger zone. The danger was so imminent that the "Lottie Carson" did not have time to raise her anchor but was letting out her

anchor chain and the "Tepic" was attempting to tow the "Lottie Carson" away from the approaching "Campeche" but was unable to do so in time to avoid the collision.

Respondents place their defense upon the assertion that the "Lottie Carson" had due warning of approaching danger and in failing to take advantage of this warning must bear the consequences. The evidence in this respect is very conflicting but it is apparent to me that the "Lottie Carson" did not have sufficient notice of danger of a collision, in order to avoid the same. Captain Hoffman of the "Lottie Carson" sensed only the danger of fire and had his crew and additional help prepare to meet such an emergency but did not have time to change the position of his boat after he learned of the contemplated maneuvers of the "Campeche". I further find that the captain of the port gave no orders for the movement of the "Lottie Carson" in time to avoid the collision. The activity about the "Campeche" was not indicative that she was to be beached in such a narrow harbor and only twenty minutes elapsed between the commencement of the towing and the collision, and only three minutes elapsed between the cutting of the tow rope and the collision. The evidence clearly discloses that the beaching of the "Campeche" was not carried out as contemplated and as a result the "Lottie Carson" was lost and the sole responsibility therefor must rest upon the "Baja California".

■ The contention of the respondents is to the effect that certain maneuvers were contemplated and the libelant had time to get out of the way and should have done so, and having failed to do so must bear the full consequence of the negligence of the respondents. Even if the "Lottie Carson" had time to get out of the way and failed to do so, such facts would not justify respondents in proceeding to destroy the "Lottie Carson". When the "Baja California" commenced the towing of the "Campeche", the "Lottie Carson" was still in place and the potential hazards to the "Lottie Carson" were fully known to the "Baja California" as amplified by the testimony of Jorge Avilla, captain of the "Campeche", who testified as follows:

"Q. By the Court: Captain, referring to Exhibit 15 in your drawing of yesterday: Now, when the 'Baja California' got ahold of your boat and started to tow it for the sand bank, at that time did you anticipate that you would collide with the 'Lottie Carson'? A. Yes; I thought of the possibility that we might strike the 'Lottie Carson'.

"Q. It was not your plan to strike the 'Lottie Carson', was it? A. Naturally not.

"Q. And if the maneuvers, as you had planned them, had worked out you would not have collided with the 'Lottie Carson'? A. No; because the 'Lottie Carson' would have been moved away from there.

"Q. I know, but when the 'Baja California' was towing your ship you expected to clear the 'Lottie Carson', didn't you? A. Yes, of course. If it did not move away from there we would have to find a way to go around it.

"Q. And the reason that your boat collided with the 'Lottie Carson' was due to the fact that the 'Baja California' cut the tow rope and permitted your boat to drift into it? A. That is one of the reasons of the causes, and also due to the current."

■ At the inception of the proceedings the claimant, Republic of Mexico, filed a suggestion of sovereign immunity and thereafter the United States Attorney filed an additional suggestion. These suggestions came on for hearing before Judge Paul J. McCormick, Senior Judge of this District, and after due consideration he concluded that this court should retain jurisdiction under the authority of The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667. Thereafter, claimant filed its answer and among other things set forth the defense of sovereign immunity but introduced no additional evidence nor attempted to show any extraordinary circumstances why the subject of sovereign immunity should be reviewed, at the same time asking this court to again pass upon the issue of sovereign immunity. I consider the ruling heretofore made on this issue as the law of the case (Commercial Union of America v. Anglo-South American Bank, 2 Cir., 10 F.2d 937), and if the claimant was dissatisfied with the ruling of Judge McCormick, it could have had the issue finally determined by a review court as was done in The Katingo Hadjipatera, 2 Cir., 119 F.2d 1022.

Claimant further contends that the laws of Mexico should control this litigation and at the trial offered in evidence copies of the (1) purported laws of Mexico covering

the maritime police authority over the Port of Mazatlan; (2) that actions cannot be maintained unless report is made within twenty-four hours to the captain of the port; and (3) that no presumption arises by reason of a collision of a moving vessel with one at anchor.

The claimant did not plead the foreign laws above mentioned and therefore the same were not admissible (21 R.C. L. 438–9) but even if they had been admissible under the facts of this case, the result would be the same. The libelant contends and his testimony supports his claim that he, at all times, complied with the orders of the captain of the port. Libelant further testified that he made a report to the captain of the port within twenty-four hours and there is no substantial evidence to the contrary. Even if the procedural law of Mexico controlled this court, the evidence clearly discloses that the "Baja California" was solely at fault.

Libelant is entitled to prevail and this matter is referred to David B. Head, as Special Master, to ascertain the amount of damages due libelant and report such findings to this court.