### THE JANKO (THE NORSKTANK).
### No. 16974.

District Court, E. D. New York.

Feb. 10, 1944.

---

Burlingham, Veeder, Clark & Hupper, of New York City (Roscoe H. Hupper, of New York City, of counsel), for libellant.

Haight, Griffin, Deming & Gardner, of New York City (Wharton Poor, of New York City, of counsel), for the Government of Norway, appearing specially.

Lord, Day & Lord, of New York City (George de Forest Lord, of New York City, of counsel), for United Kingdom of Great Britain, appearing as amicus curiae.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., and William W. Collins, Sp. Asst. to U. S. Atty., for the United States.

GALSTON, District Judge.

The question for decision on this motion made on behalf of the Kingdom of Norway appearing specially herein as claimant of the libeled vessel is whether the suggestion of immunity filed by the United States Government sufficiently establishes immunity so as to warrant the vacation of the attachment and the dismissal of the libel.

The libel recites that the libellant is a corporation which was organized in December, 1939, under the laws of the Republic of Panama, and is the owner of the motortank in question and entitled to immediate possession and use; that she was lying within the jurisdiction of this court; that on or about April 21, 1941, the libellant as owner entered into a charter party with the Anglo-Saxon Petroleum Co., Ltd., of London as charterer, providing for certain voyages from Curacao or Aruba to ports in the United States; that on or about June 23, 1941, another charter party with the same charterer was entered into also providing for four consecutive voyages from Curacao or Aruba to ports in the United States; that the libellant performed three of the four consecutive voyages and was ready to proceed from Aruba in performance of the fourth voyage, and that libellant as owner was in possession of the vessel at Aruba in September and early October, 1941; that on or about October 7, 1941, the master was notified by the Prize Commissioner for the Government of Curacao that he was relieved of command, and the officers and crew signed off; that on or about November 20, 1941, the master was relieved from his post as Prize Captain, as the ship from that date was no longer in possession of the Curacao Government, and said master was informed that the vessel had been transferred to the Norwegian Government; that a new crew was signed on the vessel and proceeded on a voyage to Halifax; that the libellant has continuously, up to the time of the filing of the libel, been kept out of the possession and control of the vessel and has been since September 25, 1941, deprived of her use and the benefits of possession. Process in rem issued and the vessel was seized pursuant to the prayer of the libel.

On February 5, 1944, the Kingdom of Norway, appearing specially, obtained an order to show cause against the libellant seeking the dismissal of the suit and the vacation of the attachment on the ground that the suit was brought against a vessel "in the possession of a friendly sovereign nation, not subject to the jurisdiction of this court, immune from suit in and process of this court." This order issued on the affidavit of a member of the firm of proc-

tors representing the claimant and upon the suggestion of immunity of the United States Government filed by a special assistant to the United States Attorney. Attached to the suggestion of immunity is a letter dated February 2, 1944, from the Secretary of State to the Attorney General, to which were attached certified copies of notes dated January 21 and January 29, 1944, with accompanying documents from the Norwegian Ambassador; and also certified copies of two notes, both dated January 22, 1944, with accompanying documents, from the British Ambassador and the Netherlands Embassy. The letter of the Secretary of State contains the following passages: "That the Department of State accepts as true the statements of fact contained in the notes of the Norwegian Ambassador and recognizes and allows the claim presented by him on behalf of the Kingdom of Norway that the vessel is entitled to immunity from judicial process in the courts of this country."

■■■ From the foregoing it is the contention of the claimant that this court, on the basis of such letter with the documents therein referred to should recognize the claim of the Kingdom of Norway and hold the vessel immune from judicial process. In opposition it is asserted that though the vessel was before the seizure under the process of this court, in possession of the Kingdom of Norway the ownership is not in the Kingdom of Norway but in the libellant. Accordingly the libellant contends that as a matter of law the suggestion of immunity is insufficient. The practice followed is, of course, sanctioned by established authority, Ex parte Muir, 254 U. S. 522, 41 S.Ct. 185, 65 L.Ed. 383, and Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1040. Immunity from seizure of a public vessel of a friendly sovereign nation is historic doctrine in international law. The Exchange, 7 Cranch 116, 3 L.Ed. 287. See also The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667.

■■■ And it is also accepted law in this country that though the immunity arose from the consideration first of public vessels, such as war ships, it was extended to include ships operated by a foreign government in the carriage of merchandise for hire, Berizzi Bros. Co. v. The Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088. The Janko falls within the broad classifications indicated since for more than two years prior to its seizure by the libellant the vessel had been in continuous possession of the Kingdom of Norway, having been put at the disposition of such government by the Kingdom of Netherlands, and was engaged in the transportation of oil in the Allied cause, and was armed with fixed guns including anti-aircraft guns which were served by members of the Royal Norwegian Navy. Thus immunity arose both because of the public character and use of the vessel and its possession by a friendly foreign sovereign, Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014.

■ Whether to constitute immunity the foreign government must show both ownership and possession of the vessel attached does not seem to have been the subject of decision, for insistence always was on the issue of possession. See The Christina, 59 Lloyd's List, Law Reports 4350, to which reference is made in the Navemar case, 303 U.S. 68, in the note, at page 76, 58 S.Ct. 432, at page 435, 82 L.Ed. 667. There it is said: "The judgment in The Cristina appears to have proceeded on that ground." (i.e. that the possession taken in behalf of the claimant government was actual)

In the Christina case Lord Atkin observed: "But the present case is not one of control for public purposes but of actual possession for public purposes. It is indistinguishable from The Gagara, which in the Court of Appeal was decided solely on the ground that the ship was in the actual possession of a foreign sovereign—namely, the State of Esthonia."

And Lord Wright in the same case observed, referring to the republican government of Spain: "The respondent government does not contend that it is the owner of the Christina but says that it is and was at all material times in de facto possession of the Christina * * * This, though not ownership, is, it is said, a right in the ship in the nature of property and was, as being the property of an independent sovereign state, immune from the interference of a court."

Later on in his opinion he states: "The crucial fact in this connection is simply that de facto possession was enjoyed by the Spanish Government."

And the following passage in Lord Wright's opinion is of particular interest in view of the criticism leveled by the libellant at the Prize Court seizure by the Dutch West Indian Government: "It is unnecessary to consider by what mode the re-

spondent (i.e. the Spanish Government) obtained possession. It is enough to ascertain that it had possession at the time when the claim to immunity was made."

Doubtless the assumption must be that when a friendly foreign government represents that it is in possession of a public vessel used in the public service, such possession and use are lawful. Comity would not permit in the present cause an exploration as to whether the seizure of the Janko by the Dutch Prize Court was lawful. Comity binds the courts as well as the diplomatic channels. In Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 143, 40 L.Ed. 95, the Supreme Court said that comity "is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." The courts of the United States will not sit in judgment on the acts of another government done within its own territory. See American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; Banco de Espana v. Federal Reserve Bank, 2 Cir., 114 F.2d 438.

This opinion is supplementary to that heretofore filed as being perhaps a more detailed explanation of the respective contentions of the parties and the relevant law. Accordingly for the reasons stated heretofore and now, the court declares itself without jurisdiction further to detain the seized vessel and an appropriate order for the release of the attachment will be made.