**CIVIL AERONAUTICS BOARD,**
Plaintiff,

v.

**ALITALIA–LINEE AEREE ITALIANE,**
S.p.A., Defendant.

No. 71–C–772.

United States District Court,
E. D. New York.

June 25, 1971.

Edward R. Neaher, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., by James D. Por-ter, Jr., Asst. U. S. Atty., Chief, Civil Division, and Stephen A. Alterman, Enforcement Attorney, Civil Aeronautics Board, for plaintiff.

Glassie, Pewett, Beebe & Shanks, by Allan I. Mendelsohn, Washington, D. C., of counsel, for defendant.

## MEMORANDUM

JUDD, District Judge

This motion for a preliminary injunction against Alitalia-Linee Aeree Italiane, S.p.A. selling round-trip tickets to Rome at reduced youth rates, before filed tariffs have become effective, presents three basic questions: (1) Does the direction of the Italian Ministry of Transportation and Civil Aviation immunize Alitalia, a foreign air carrier, from following the requirements of federal statutes? 49 U.S.C. § 1373. (2) Can the Civil Aeronautics Board consider the effect of a tariff on competition as a basis for denying earlier effectiveness than under the normal thirty-day notice requirement? (3) If an injunction is granted against Alitalia, should ticketholders be prevented from using their tickets?

The motion was submitted for decision on the filed papers and oral argument.

### Facts

Alitalia asked the C.A.B. on June 10, 1971 for permission to file a new tariff effective on short notice, covering round-trip transportation for youths between United States east coast ports and Rome or Milan for $199.00 at any time of year. The permission was denied, and Alitalia followed by filing a formal youth fare tariff of $199.00 on June 14, 1971 under the thirty-day notice provision of 49 U.S.C. § 1373(c). It next applied for reconsideration of the denial of its short notice filing; the Board denied this application by order dated June 22, 1971. One of the reasons given by the Board for refusing to advance the effective date was that the $199.00 tariff would undercut the existing rates of

other carriers, which had fares of $200.-00 to $228.00, depending on season and distance, to London, Paris, Amsterdam, Munich, and Zurich. There usually is a distance differential between west coast European cities and Rome, and there were informal statements by C.A.B. representatives that a $215.00 and $235.00 tariff might be accepted on short notice.

In spite of the fact that the new tariff is not effective, Alitalia has continued to advertise and sell tickets at the $199.00 round-trip fare.

Alitalia relies on an order from the Ministry of Transportation and Civil Aviation of Italy, dated June 9th, stating "This Ministry instructs your Company to apply with immediate effect on your own services over the North Atlantic sector between Italy and United States of America/Canada the tariff as per above subject." The attachment to the order set forth the $199.00 youth fare between U. S. east coast ports and Rome and Milan.

No appearance has been entered for the Italian Government, which owns 80% of the stock of Alitalia.

The persons who have purchased tickets from Alitalia have not been made parties to the proceeding, although the plaintiff seeks to enjoin Alitalia from furnishing them the transportation which their tickets specify. About 3,500 tickets may be involved.

An Air Transport Agreement between the United States and Italy dated June 22, 1970 provides in Article 10 that rates charged by each airline shall be subject to the approval of the aeronautical authorities of the contracting parties. The Civil Aeronautics Board is designated as the aeronautical authority of the United States. Article 10B states that any proposed rate

> shall, if so required, be filed by said airline with the aeronautical authorities of the other Contracting Party at least thirty (30) days before the proposed date of introduction unless the Contracting Party with whom the fil-

ing is to be made permits filing on shorter notice.

### Discussion of Law

1. Dealing first with the alleged compulsion from Italian authorities to put the rates into effect, it is not clear that the Transportation Ministry's order calls for putting the rates into effect without C.A.B. approval. In the light of the Air Transport Agreement, the instruction to apply the new schedules "with immediate effect" would seem to call only for an immediate application to the aeronautical authorities of the United States.

■ Even if the intention were that the rates apply immediately, no case has been cited which permits a foreign government to direct its nationals in the United States to defy American law. American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909), cited by defendant, related to activities in Costa Rica and refused to apply the Sherman Act there. It is quite another thing to claim exemption from American law in New York. Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952) related to use of a United States trademark in Mexico, where it was registered in the adversary's name. Defendant's other cases are similarly distinguishable.

■ Moreover, claims of immunity from American law should be presented through diplomatic channels. The Supreme Court has said that the way to claim immunity is through a suggestion of the United States State Department. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667 (1938). No one representing the United States State Department has supported Alitalia's claim of immunity.

■ 2. Alitalia asserts that C.A.B. has been given no authority to fix rates. It is a long step from this argument to the contention that it cannot consider competitive effects in determining whether to relax the requirement of thirty-day notice of changes in rate.

Since 49 U.S.C. § 1302(c) gives one of the criteria of public interest as being "charges, without unjust discriminations * * * or unfair or destructive competitive practices," it should be proper for the Board to consider the entire rate structure before finding that it is "in the public interest" to allow a change upon less than the normal notice. Alitalia's filing not only reversed the usual distance differential, but eliminated the usual difference between peak-season and off-peak fares.

Even if this were a proceeding in the nature of mandamus, the court does not find that the C.A.B. action has been arbitrary.

Alitalia asserts discrimination because competing rates of other carriers were all given effect on short notice after Sabena, the Belgian airline, put low transatlantic rates into effect in May. If Alitalia had sought merely to match Sabena, with a distance differential—or perhaps even without a distance differential—it might claim discrimination. But Alitalia's move may start a new round of price cutting, and it cannot complain that it is required to let other airlines have the period of the thirty-day statutory notice in which to consider what action they will take. Sabena's rates took effect only after the normal thirty days notice.

3. The final question is what effect the temporary invalidity of the new Alitalia tariffs has on persons who have already bought tickets for transportation at the $199.00 rate.

The case of Interstate Commerce Commission v. All American Bus Lines, Inc., 22 F.Supp. 525 (S.D.N.Y.1937), which plaintiff cites, does not touch this point. It enjoined the sale of discount bus tickets, but Judge Patterson noted that the tickets were being honored at and after the beginning of the suit, and he directed only a decree enjoining the carrier from issuing "due bill tickets."

As noted, no one is in the case to represent the innocent ticket-buyers, and argue the difficult question whether they are in *pari delictu* and should be deprived of their bargain. The court will defer consideration of the request to enjoin furnishing transportation, pending a reasonable opportunity for the United States Consumer Protection and Environmental Health Service to comment on it, if it chooses to do so.

The Board has authority to ask the Department of Justice to seek penalties of up to $1,000 for each violation, 49 U.S.C. § 1471(a), which would seem to be a sufficient penalty against Alitalia, if it determines to honor outstanding tickets and this is treated as a violation of law.

The court will sign a preliminary injunction covering the matters described in paragraphs (a) and (b) of the order to show cause and deny the injunction against providing air transportation under tickets already sold, without prejudice to renewed application by the plaintiff after suitable provision has been made for representation of the interests of the ticket holders.