SEA HUNT, INC., Plaintiff,

v.

The UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS, ETC. in
rem., Defendant.

Civil Action No. 2:98CV281.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 25, 1998.

Anthony F. Troy, Mays & Valentine, Richmond, VA, David Kegebein Sutelan, Mays & Valentine, Norfolk, VA, Peter E. Hess, Wilmington, DE, David J. Bederman, Emory

University School of Law, Atlanta, GA, for Sea Hunt Inc., Plaintiff/Counter–Defendant.

Frederick Schilling Fisher, Roger L. Chaffe, office of Attorney General, Richmond, VA for Commonwealth of Virginia Intervenor–Plaintiff.

Damon C. Miller, U.S. Department of Justice, Washington, DC, Lawrence R. Leonard, Office of U.S. Attorney, Norfolk, VA, Caroline M. Blanco, U.S. Department of Justice, Environment & Natural Resources Div., Barbara B. O'Malley, Department of Justice, Washington, DC, for Intervenor–Plaintiff U.S. and Claimant–Spain.

George Robert Leach, Williamsburg, VA, for Claimants Alpha Quest Corp. and Richard L. Cook.

## OPINION AND ORDER

CLARKE, District Judge.

The parties come before the Court on the United States' Renewed Motion to Intervene on behalf of the Kingdom of Spain ("Spain"), pursuant to Federal Rule of Civil Procedure 24, Supplemental Admiralty Rule (C)(6), and Local Admiralty Rules (e)(3) and (e)(13). For the reasons set forth below, the Court DENIES the motion.

### I.

By Order of March 12, 1998, this Court issued a warrant for the arrest of the defendant vessel(s), granted Plaintiff the exclusive right to salvage the vessels, allowed sixty (60) days within which potential claimants could file claims to the vessels, and allowed twenty (20) days thereafter for parties to file answers.

On March 21, 1998, Notice of the Admiralty Arrest of the Shipwrecked Vessel(s) and Entry of Preliminary Injunction was published in the Virginian Pilot, in accordance with S.A.R. C(4) and L.A.R.(c)(3).

The United States of America ("United States") responded timely by filing a Motion to Intervene on behalf of Spain in order to assert Spain's claim of ownership over the vessels, believed to be the *JUNO* and *LA GALGA*, Spanish warships which sank in the vicinity of the salvage areas in 1802 and 1750, respectively. By Order of July 14, 1998, this Court denied the United States' motion on procedural grounds, but allowed the United States ten (10) days within which to file a proper motion to intervene. On July 22, 1998, the United States filed a Renewed Motion to Intervene together with Spain's verified claim of ownership to the vessels. Plaintiff Sea Hunt, Inc. ("Sea Hunt") now contends that the United States' renewed motion should be dismissed because of its belief that the United States lacks the proper authority to intervene in this matter as representative of Spain.

### II.

The United States takes the unique position in this case of holding itself out as counsel for Spain. The Court has been unable to uncover any precedent for this position, and the United States has cited none. Only one case seems to contain an analogous situation. In *The Amistad*, 40 U.S. (15 Pet.) 518, 10 L.Ed. 826 (1841), the United States sought to intervene under a previous treaty with Spain[1] in order to exert Spain's claim over a Spanish owned vessel which had been transporting African natives as part of an illegal slave trade. The Spanish minister in *The Amistad*:

> had officially presented to the proper department of the government of the United States, a claim for the restoration of the vessel, cargo, and slaves, as the property of Spanish subjects, which had arrived within the jurisdictional limits of the United States, and were taken possession of by the said public armed brig of the United States; under such circumstances as made it the duty of the United States to cause the same to be restored to the true proprietors, pursuant to the treaty between the United States and Spain: and praying the Court, on it being made legally to appear that the claim of the Spanish minister was well founded, to make such order ... as would best enable the United States to comply with their treaty stipulations.

1. Treaty of Friendship, Limits, and Navigation, October 27, 1795, U.S.-Sp., 8 Stat. 138.

*Id.* at 588. The United States claimed "a right to intervene in the manner in which they have done, to obtain a decree for the restitution of the property, upon the application of the Spanish minister," a position which was "strenuously" objected to by the opposition. *Id.* at 591. However, because the Court decided the case in favor of the African "slaves" on board and against the Spanish owners of the vessel, it became "wholly unnecessary for [the Court] to give any opinion upon the other point, as to the right of the United States to intervene in this case in the manner already stated." *Id.* at 597. Because the Court in *The Amistad* did not reach a conclusion on the issue of the United States representation of Spain, it provides minimal guidance in this case, and it remains the duty of this Court to evaluate the issue as one of first impression.

## A.

■ The United States relies on the language in Article X of the Treaty of Friendship and General Relations between the United States and Spain ("Treaty"). Article X reads as follows:

> In case of shipwreck, damages at sea, or forced putting in, each party shall afford to the vessels of the other, whether belonging to the State or to individuals, the same assistance and protection and the same immunities which would have been granted to its own vessels in similar cases.

Treaty of Friendship and General Relations, July 3, 1902, U.S.-Sp., 33 Stat. 2105.

The Court does not read that language as granting the United States authority to represent Spain's interests as its attorney in a court of the United States. Instead, this is merely a reciprocity provision, common to many international agreements, which provides that a Spanish ship in peril in United States waters shall have available the same rights and remedies that a United States ship would have in Spanish waters. *See Nicholas E. Vernicos Shipping Co. v. United States*, 349 F.2d 465 (2nd Cir.1965). Nothing in the language of Article X of the Treaty transfers any rights over the vessels to the United States, nor does it provide authorization for the United States to represent Spain's interest in an admiralty proceeding.

In fact, under the Treaty, Spain has the right to represent itself in this litigation. Article VI of the Treaty states:

> The citizens or subjects of each of the two High Contracting Parties shall have free access to the Courts of the other, on conforming to the laws regulating the matter, as well for the prosecution as for the defense of their rights, in all the degrees of jurisdiction established by law. They can be represented by lawyers, and they shall enjoy ... the same rights and the same advantages which are or shall be granted to the citizens or subjects of the most favored Nation.

*Id.* Article XXI of the Treaty states that:

> The Consuls–General, Consuls, Vice–Consuls and Consular Agents of the two High Contracting Parties, shall have the right to address the authorities of the respective countries, national or local, judicial or executive ... for the purpose of complaining of any infraction of the treaties or conventions existing between the two countries, or for the purpose of information, or the protection of the rights and interests of their countrymen, whom, if absent, such consular officers shall be presumed to represent ....

*Id.* Taken together, these provisions grant Spain nothing more than the same rights before the Court as any United States citizen. Nothing in these Treaty provisions implies that the United States can or must represent Spain's interests in this action.

## B.

■ The United States also relies on a May 8, 1998 Verbal Note transmitted from the Spanish Embassy in Washington to the Department of State, allegedly asking the United States to act as counsel on Spain's behalf. Paragraph 3 of the note requests that:

> In accordance with Article 10 of the Treaty of Friendship between Spain and the United States signed in 1903, the Embassy of Spain requests that the competent authorities take the necessary steps to ensure the above including those related to the Feder-

al Court of the State of Virginia involved, and grant to these vessels the same assistance, protection and immunities that shipwreck (sic) property of the United States would merit.

Verbal Note, May 8, 1998 (translation). While this note does request the United States' assistance under the Treaty, it does not grant authority for the United States to serve as Spain's counsel, nor does it transfer any interest or title in the wrecks to the United States so that it could exert its own claim. It simply asks that the "competent authorities" take the necessary actions to ensure Spain's claims are heard.

A Court has already examined the meaning of the term "competent authorities" in relation to the 1902 Treaty between the United States and Spain. In *United States v. Mason*, 344 F.2d 673 (2nd Cir.1965), Spanish officials invoked Article XXIV of the Treaty to have the United States Navy and the Immigration Service detain an alleged deserter from the Spanish Navy. Under Article XXIV (since revoked), the power to arrest and detain deserters was given to "competent national or local authorities." *Id.*, at 676. The court held, however, that the Navy and the Immigration Service had no such competence, unless conferred by law separate from the Treaty. *Id.* at 682. Thus, "competent authorities" as mentioned in the Verbal Note in relation to the Treaty has no meaning absent some other enabling legislation. The United States makes no mention of such a statute to confer on the Department of Justice the ability to represent Spain's interests under the Treaty in court.

Thus, neither the Treaty itself nor the Verbal Note from Spain invoking the Treaty contains language sufficient to support the United States intervention on behalf of Spain as its attorney in this case. However, the inquiry does not end there.

### III.

■ That a foreign government may request the assistance of the United States in a court appearance through diplomatic channels is one of the oldest principles of law in the United States. *See The Cassius*, 2 U.S. (2.Dall.) 365, 1 L.Ed. 418, 14 F. Cas. 431

(1796); *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812). This posture has most often been taken by foreign governments in cases involving the assertion of sovereign immunity previous to enactment of the Foreign Sovereign Immunity Act in 1976. *See* 28 U.S.C. § 1604.

### A.

Generally, a foreign government had three options in making an immunity claim in a United States court. First, Ambassadors or other consulate officials could appear in person on behalf of the sovereign they represented. Second, the sovereign could have "its accredited and recognized representative" appear on its behalf. The final option was to make a claim to the Department of State, which, if it supported the foreign sovereign's claim, would make "an appropriate suggestion to the court by the Attorney General, or some other law officer acting under his direction." *In re Muir*, 254 U.S. 522, 532–33, 41 S.Ct. 185, 187, 65 L.Ed. 383 (1921). This suggests that if the United States desires to intervene, the proper way to do so is through a "suggestion" or an amicus curiae brief, not by intervening directly as counsel for the foreign sovereign.

The United States, however, is under no obligation to make a suggestion on behalf of a foreign sovereign. In fact, the United States has declined to represent Spain in an action similar to this one, even though the same Treaty on which the United States now relies was in force then. In *The Navemar*, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667 (1938), Spain sought to make a claim of ownership to a vessel which had been libeled in admiralty in the District Court for the Eastern District of New York. Spain requested assistance by the United States, but, the Department of State:

> declined to honor the request of the Ambassador [of Spain] that representations be made in the pending suit by the Attorney General of the United States in behalf of the Spanish government, and ... advised the Ambassador that his government was entitled 'to appear directly before the court in a case of this character.'

*Id.* at 433, 71. The United States in *The Navemar* apparently did not feel compelled by the Treaty of Friendship and General Relations to make any representations at all before the court, much less to serve as Spain's counsel, and correctly advised Spain to make an appearance on its own.

### B.

The United States contends that its own interests are at stake in this matter, and that it may intervene as a matter of right pursuant to Fed.R.Civ.P. 24. The United States is concerned primarily about its "treaty implementation responsibilities" and the desire to ensure that, should a case arise in a foreign jurisdiction concerning a United States warship, the United States will be treated fairly. Even if these are valid interests, intervening in this case as counsel for Spain is not the proper way to assert them. In other cases of similar, or greater international importance, the United States has filed separately, on its own behalf, as amicus curiae.

In *Republic of Argentina v. City of New York*, 25 N.Y.2d 252, 303 N.Y.S.2d 644, 250 N.E.2d 698 (N.Y.1969), Argentina brought suit against the City of New York claiming that its consulate offices in New York City were exempt from the city's property tax. The United States, arguing as amicus curiae, claimed that:

> [t]axation by political subdivisions of the United States of foreign government-owned real property used for official purposes has been a growing irritant in the conduct of the foreign relations of the United States. It left unchecked (sic), such taxation will prejudice and hamper the effective conduct of our foreign relations.

*Id.* at 700. The Court noted that, because of the large number of consulates and other offices it maintained abroad, the United States had a real interest in the litigation. *Id.* at 700 n. 2. However, the United States chose to intervene in that case on its own behalf as an amicus party rather than directly as an attorney on behalf of Argentina. In *Jackson v. People's Republic of China*, 794 F.2d 1490 (11th Cir.1986), China challenged a default judgment for failure to respond to a claim brought by holders of bonds issued by the Imperial Chinese government in 1911. China pressured the United States to take action, stating through diplomatic channels that it regarded the default judgment "as a serious matter and a major irritant in bilateral relations with the United States," and threatening to "take corresponding measures" if any of its property was attached to enforce the judgment. *Id.* at 1495–96. The United States, instead of volunteering to represent China to ensure good relations, advised China to "retain counsel to appear in the district court and urge sovereign immunity and any other defenses." *Id.* at 1495.

The United States then filed a statement of interest on its own behalf, arguing that allowing China "to have its day in court will significantly further United States foreign policy interests; conversely denying it that day in court is likely to have a negative impact on United States interests." *Id.*

At no time in *Jackson* did the United States seek to appear as counsel for China, despite the important national interests at stake. *Jackson* provides an outline of the path which the United States should have followed in the present action pending before this Court.

### IV.

■ Finally, the United States claims that it may appear as representative of Spain in this case under 28 U.S.C. § 517, which states that:

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

28 U.S.C.A. § 517 (West 1993). This Court does not agree that this statute grants authority for the Department of Justice to represent Spain. The United States has no real interest in the shipwrecks at issue in this case. If this Court finds that they are abandoned, then they belong to the Commonwealth of Virginia under the Abandoned

Shipwreck Act. *See* 43 U.S.C. § 2105. If this Court finds that the ships have not been abandoned, then they belong to the Kingdom of Spain. In either instance, the United States' interests are not at stake.

The United States also argues, however, that it has in interest in this action based on its "treaty implementation responsibility," that is, if the United States does not uphold its treaty obligations to Spain in this case, Spain will likely not uphold its obligations to the Untied States in the future. The Court does not doubt that this is true, but, as has been discussed above, the proper way for the United States to assert its interest is through an amicus brief or a statement of interest on its own behalf, not intervening as counsel for Spain. In addition, the only treaty responsibility the United States has is to grant Spain the same rights and remedies as a United States citizen would have. The United States has met that responsibility by allowing Spain to come before the Court, and Sea Hunt has conceded that Spain has the right to make a claim in this case. Thus, the United States has no remaining interest to assert in this matter.

### V.

For the foregoing reasons, the Court hereby DENIES the renewed motion to intervene filed by the United States acting as attorney on behalf of the Kingdom of Spain. Because the Kingdom of Spain has been improperly represented by the United States in this matter, the Court will disregard all pleadings heretofore filed on Spain's behalf by the United States. The Court GRANTS the Kingdom of Spain ninety (90) days to obtain other counsel or make an appearance on its own behalf in order to properly assert its claims in this case.

The clerk is DIRECTED to mail a copy of this Order to counsel for the United States, counsel for Sea Hunt, Inc., and pursuant to the Foreign Sovereign Immunity Act and The Hague Convention on Service Abroad of Judicial and Extra Judicial Documents, to the following officials for the Kingdom of Spain:

1. Secretaria General Tecnicia Subdireccion de Cooperacion Juridica Internacional Ministerio de Justicia San Bernardo, 45. 28015 Madrid, Spain

2. --His Excellency Antonio Oyarzabal Embassy of Spain 2375 Pennsylvania Avenue, N.W. Washington, D.C. 20037.

IT IS SO ORDERED.